# APPENDIX.

## Singleton v. Scott *et al.*[1]

1. PRACTICE IN CHANCERY. A complainant in chancery will not be permitted to make a case by his proof and upon the hearing which is different from that presented in his bill.

2. TRUSTEE ACTING BY ATTORNEY. When by the nature of a trustee's appointment, special confidence is reposed in his discretion, he cannot act by attorney. He may substitute when a particular thing, which does not require the exercise of judgment, is directed to be done by the appointment.

3. SAME. Where a deed of trust, executed to secure the payment of a promissory note, conferred upon the payee of the note the power to sell the premises therein granted, upon default in the payment of the note, and prescribed that the sale should be made at public auction, and for cash, at the door of the court house in a county named, after notice by publication in a newspaper for a certain number of weeks named; and the time of the sale was fixed and the notice was published under the direction of an indorsee of the note, and the sale was otherwise conducted as directed by the deed, by the payee, who was the trustee named therein; it was held that the sale was valid

4. PLEADING, IN EQUITY: ALLEGATIONS OF FRAUD. In alleging a combination and collusion for the purpose of defrauding a party, it is not necessary to set out the minute facts which tend to show such combination and collusion. A general statement of the facts should be made.

5. SALE IN PARCELS. Where a power is given to a trustee to sell land upon a default being made in the payment of a debt thus secured, and the grantor has not provided for its sale in parcels, a sale of the entire tract will not be set aside if it was more judicious than a sale in parcels, or if the interest of the debtor was thereby promoted. Neither would a sale of an entire tract in a body, under such circumstances, vitiate the title of a purchaser who was ignorant of what the interests of the beneficiary required.

---

1. This opinion was filed at the Argument Term, 1859, and has hitherto been overlooked by the Reporter. The court, when it was filed, consisted of WRIGHT C. J., and STOCKTON and WOODWARD JJ.

6. INADEQUACY OF PRICE. Inadequacy of price, when unaccompanied by circumstances of fraud, is not sufficient to vitiate a sale made by a trustee under a power.

7. PUBLICATION OF NOTICE. Where a deed of trust provided that notice of a sale made in the execution of the power should be published in a newspaper, without designating the name thereof or its place of publication; held that the trustee was authorized to select the paper in which the publication should be made, and that a sale made pursuant to a notice thus published would not for that reason be void.

*Appeal from Jackson District Court.*

THURSDAY, APRIL 7, 1859.

IN May, 1852, the complainant, to secure to the defendant, Scott, the sum of seventy dollars and interest thereon, conveyed to him by deed of trust certain real estate. Under this deed, Scott advertised and sold the land. This bill is filed against Scott, the purchaser, and those subsequently taking title to the land, to set aside the sale, all subsequent deeds, and to redeem. For the material facts, see the opinion. Respondents appeal.

*Booth & Graham,* and *Spurr* for the appellants.

I. Sales made in accordance with the terms of deeds of trust are valid. Code of 1851, sections 2096, 2097. In the hands of *bona fine* purchasers they are so without regard to the equities between the parties to the deed. Code of 1851, section 2081; *Jackson* v. *Henry,* 10 John. 185.

II. For any deficiency arising from inadequacy of price, Scott, the trustee, is alone responsible, and to him alone must the plaintiff look. *Minnie* v. *Cox,* 5 John. 446; *Taylor* v. *Binham,* 5 How. 233; *Jackson* v. *Davenport,* 20 John. 549.

III. A court of equity will not infer notice of plaintiff's equities from the fact that one of the defendants holds under a quit claim deed. SAVAGE C. J. in *McDonald* v. *Nelson,* 2 Cow. 193.

IV. Mere inadequacy of price does not *per se* constitute evidence of fraud. The inadequacy must be so gross as to amount to conclusive evidence. *Seymour* v. *Delancey,* 3 Cow.

445; *Osgood* v. *Franklin* 2 John. Ch. 1, reviewed and affirmed in the Court of Errors, 14 John. 559; *Greenup* v. *Stoker*, 12 Ill. 24; Story Eq. Jur., sections 224, 245 and 247 and the authorities there referred to.

V. Where a deed is obtained by fraud, and the fraud is shown clearly, the conveyance will be set aside, as between the parties, but the rights of *bona fide* purchasers without notice will not be disregarded. *Fletcher* v. *Peck*, 6 Cranch 133, 135; *Jackson* v. *Gwinn*, 8 John R. 137; *Beebe* v. *Bank of New York*, 1 Ib. 573; *Jackson* v. *Henry*, *supra*; *Bumpus* v. *Plattner*, 1 John. Ch. 219; *Damarest* v. *Wyncoop*, 3 Ib. 147; *Fitzsimmons* v. *Ogden*, 7 Cranch. 218; *Alexander* v. *Pendleton*, 8 Cranch. 462; 1 Story's Eq. Jur., sections 449, 411.

VI. The rule that sales will be set aside for gross inadequacy of price applies to private sales only, and not to sales at public auction. 1 Freeman 441; *Benton* v. *Shuve*, 4 Ind. 66; *Livingston* v. *Byrne*, 11 John. 566; 1 Madd. Ch. 214; *White* v. *Damon*, 7 Ves. Jr. 33; *Burrows* v. *Lock*, 10 Ib. 474.

*W. E. Leffingwell* and *B. E. Poor* for the appellee.

There was no sale which a court of equity can sustain, for the following reasons:

I. The deed of trust is too indifinite as to the manner of advertising the property; "the newspaper," being the only designation as to what newspaper it shall be published in. The instrument could operate as a mortgage only.

II. The trustee cannot delegate his authority. The trust is a personal one and the trustee has no power to authorize another to exercise the discretion vested in him. Adams Eq. 212; 2 Kent. Com. 633; *Newton* v. *Bronson*, 3 Kerman 593; *Berger* v. *Duff*, 4 John. Ch. 637 and the authorities cited by the chancellor; Paley on Agency 178, 193 (marginal;) Story on Agency, section 165, 166 210; Hill on Trustees, 717; *Bradford* v. *Bellfield*, 2 Simons 264; Sir John Leach in *Ord* v. *Nochs*, 5 Madd. Ch. R. 438.

III. The manner of conducting the sale was fraudulent, and will avoid it except as to the rights of intervening *bona fide* purchasers:

1. The declarations at the sale, that the land would be sold only with an equity of redemption, tended to stifle bidding, and is good ground for avoiding the sale. *Smith* v. *Greenlee*, 2 Dev. 126; *Phippen* v. *Stickney*, 3 Met. 388; *Woods* v. *Hudson*, 5 Mumf. 423. The rule is well settled that everything done by the parties to a sale, calculated to prevent competition, renders such sale void. *Longworth* v. *Butler*, 3 Gilm. 32; *Quarles* v. *Lacy*, 4 Mumf. 252.

2. The sale was made to one of the parties in interest, and the price was grossly inadequate. *Heirs of Cavender* v. *Smith*, 1 Iowa 306; *Hanly* v. *James*, 5 Paige 487.

3. The land was all sold together and should have been sold by forty acre tracts, separately, in the manner directed by the Code, section 1903, directing sales of real estate on execution. *Day* v. *Graham*, 1 Gilm. 436; *Woods* v. *Monnell*, 1 John. Ch. 505; *Graff* v. *Jones*, 6 Wend. 522; *Wakefield* v. *Campbell*, 20 Me. 393.

IV. None of the defendants occupy the position of *bona fide* purchasers. In order to sustain the position that the defendants are innocent purchasers, they must both aver and prove that they have actually paid the consideration which was agreed to be paid. 3 Atk. 304; *Brown* v. *Chiles*, 10 Pet. 211; Story's Eq. Pl. section 805, 604 *a*; *Frost, et al* v. *Raymond*, 2 Caines 108; *McConnell* v. *Reed*, 4 Scam. 117; 2 Danl. Ch. Pr. 775; *Doyle* v. *Knapp*, 3 Ib. 538; 1 Story's Eq. Jur. section 1502; 2 Fonblanque Eq. 149 and notes. A purchaser by quit-claim deed can not make such a plea. *Oliver* v. *Piatt*, 3 How. 410; *Brown* v. *Chiles*, *supra*. All the defendants are affected with notice *lis pendens*. *Murray* v. *Ballou*, 1 John. Ch. 566; *Hatley* v. *Finster*, 2 John. Ch. 158; *Jackson* v. *Andrews*, 7 Wend. 156; *Murray* v. *Sylburn*, 2 John. Ch. 441; notes to *Le Neve* v. *Le Neve*, 2 Eq. L. C. part 1, page 99; Sug. Ven. 487; *Fonnville* v. *Nash*, 2 P. Wms. 307.

WRIGHT, C. J.—We strongly incline to the opinion that one, if not more, of the respondents occupies the position of an innocent purchaser; and acquired and transferred the title to the land without notice of the equity now set up by complainant. Indeed it is very clear that they had no actual notice and it is questionable, to say the least of it, whether there was any constructive notice. But as we conclude that upon the merits of the case, looking alone to the equity set up by complainant, the decree below must be reversed, we direct our attention to this view of it. In doing so we shall examine in their order the points made by counsel for the complainant.

The trust deed conveyed to Scott one hundred and sixty acres of land, and was made to secure the sum of seventy dollars with interest. The debt was due three months from the date of the deed. The deed contained this condition: " If the said Michael Singleton shall fail to pay the sum of money, or any part thereof when due, then the said Thomas Scott shall, after having given notice by three week's publication in the newspaper, proceed to sell at the door of the court house of Jackson county, at public auction, for cash, to the highest bidder, the above described real estate, and is hereby authorized and empowered to execute to the purchaser at such sale all deeds," &c. Soon after the execution of the deed, (to-wit, May 11, 1852,) Scott sold and assigned his interest in the promissory note to M. & J. Beaubien. The sale was made September 25, 1852, the notice thereof being published in the "Western Democrat," a newspaper published in the county of Jackson, for four weeks successively, commencing on the 25th of August and ending on the 15th of September, 1852. It took place at the door of the court house in Jackson county, and was made at public auction. There is testimony tending to show J. Beaubien caused the notice of the sale to be published, and that Scott knew nothing of it until a day or two before the sale. It is not denied however that Scott was present and conducted the sale, and

made the deed to the purchaser. It is now claimed that the power to sell was delegated to Scott, and that as he did not fix upon the time of sale, or direct what may be termed the foreclosure of the deed of trust, the sale is void. The power to sell, it is said, was a discretionary power, and could not be transferred to a third person by assignment.

To this position the first answer is, that while there is some proof tending to establish the fact relied upon, there is no allegation in the bill of this nature; nor is it pretended therein that any other person than Scott fixed upon the time of the sale, or directed the advertisement of the same. It seems to have been an afterthought, and to have been only incidentally developed by the testimony. The complainant, as we shall see by his bill, relied upon different grounds for impeaching the sale. He has made his case by that, and will not now be permitted to make a different one by his proof and upon the hearing. *Boone* v. *Chiles*, 10 Pet. 211.

But it is not true that the donee of a power cannot in any case execute a deed of appointment or any other act by attorney. He may not do so, where by the nature of his appointment, a special confidence is reposed in his discretion. In the nature of things, it is said, he cannot transfer to another this discretion; it can only be exercised by himself, in pursuance of the confidence reposed in him. Where however a particular thing is directed to be done, which does not require the exercise of judgment, a substitution is admissible. *Pearson* v. *Jamison*, 3 McLean 197; *Heirs of Piatt* v. *Heirs of McCullough*, Ib. 69, and the authorities there cited.

In this case the thing to be done, and the manner of its execution, were particularly directed by the instrument containing the power. Thus, the sale was to be at the door of the court house in Jackson County; it was to be at public auction; was to be for cash; the notice was to be given in a newspaper and for three weeks. The trustee had no discretion to exercise, unless it was in the selection of the paper in which the notice was to be published and the day of sale.

And having conducted the sale in all respects as required by the power, he adopted the selection made and time fixed, and the case must stand as if he had acted from the beginning by himself instead of through another.

The charge that there was a combination at the time of the sale, between the trustee and the bidders, to sacrifice the land and make it sell at a grossly inadequate price, is not sustained by the proof. Indeed we think the evidence shows that the trustee acted in the utmost good faith, and that he studiously endeavored to guard and protect the interest of the complainant. Not only so, but the bill fails to charge any such combination. It is stated, "that said trustee's sale was conducted in a fraudulent and improper manner, for that the said trustee, said Beaubien and Smith, well knew that either forty acre tract of said land was of sufficient value to satisfy said note and mortgage; yet that the same was offered for sale in one lump as aforesaid, and sold in one lump for the sum of one hundred and fifty dollars, a grossly inadequate price. And that there were but two or three persons present at the said sale, and there was no necessity of their proceeding with the sale, but the same might and should have been adjourned to afford an opportunity for more persons being present, who might bid on the lands, so that the same might sell for about their reasonable value." In addition to this, the subsequent purchasers are charged with notice of "the fraudulent and improper proceedings aforesaid." Now it was not necessary for the pleader to set forth all the minute facts tending to establish or confirm the fact of combination to sacrifice the land. But to admit testimony upon the subject, and put the respondents upon their defense thereon, there should at least have been a general statement of the facts. (Story's Eq. Jur., sections 28, 252, 257, 263; *James v. McKernan*, 6 Johns. 543.) The general rule (says KENT, C. J., in this case,) is, that no interrogatories can be put that do not arise from the facts charged in the issue. And it is no sufficient answer to say that the objection not being made on the hearing in the

court below, must be deemed to have been waived. It was improper to consider the testimony looking to that point, if any, and counsel for the respondents had a right to presume that such would be the action of the court. Indeed there is nothing to show but what it was passed over without consideration, and if so, properly. *Crocket* v. *Lee,* 7 Wheat. 522.

It is also insisted that the sale was void, for the reason that the whole tract was sold when the smallest subdivision according to the government surveys would have sold for a sufficient amount to satisfy the debt. And in connection with this objection we will consider the one that the land was sold for a price grossly inadequate, and that therefore the sale should have been set aside.

We will not stop to examine the point made by appellants, that under the appointment the trustee had no power or authority to sell less than the whole tract; that he had no right to sell it in parcels. However this may be, it was certainly not his duty, nor would he have a right to do so, if thereby the interest of the debtor would be prejudiced. It is clear that the deed does not in terms require a sale in parcels. The trustee is not empowered even (as is usually the case) to sell said land, "or so much thereof as may be necessary;" but the power is to "sell at public auction for cash, to the highest bidder, the above described real estate." Under this power he was fully justified in selling the land "in a lump," (as stated in the bill) if thereby he promoted the interest of the debtor. The charge upon this subject, contained in the bill, is fully denied and put in issue by the answer, and all the testimony there is upon the subject shows that complainant was benefited rather than injured by this manner of selling. By this we mean that the testimony shows, that in the language of one witness, "the quarter section when sold as a whole would bring more than if sold in forties;" or as another expresses it, "it was more judicious to sell it as a whole." If this was the true state of the case (and there is nothing to rebut it,) then the sale

was not void. The trustee was bound to act in good faith, and in the exercise of any discretion left with him was bound to exercise it in a reasonable manner. If it would have been injudicious to sell the land in parcels, and the trustee knew it, he would have violated the trust reposed in him. We do not say that the sale for that reason would have been so far void as to defeat the title of a *bona fide* purchaser. It certainly would not be where the trustee acted judiciously, and for what, as is shown by the testimony, was the best interest of the debtor. Parties may fix their own terms to any contract, and may prescribe the manner in which it may be enforced, and sales made in accordance with the terms thus fixed and the manner thus prescribed, will be good and valid. There may be cases, of course, where equities may arise between the immediate parties to the contract, as between a mortgagor and mortgagee, trustee and beneficiary and the like. These equities will not, however, interfere with the title in the hands of a *bona fide* purchaser. (Code of 1851, sections 2081, 2096–7.) Thus, where as in this case, a power is given to sell land upon default being made in the payment of the debt secured, and the debtor has not provided for its sale in parcels, the sale should not be set aside if it was more judicious to sell the whole tract in a body, or if in this way the interest of the debtor would be promoted. And certainly to thus sell, would not, under like circumstances, vitiate the title of a party purchasing, who was ignorant of what would be most for the interest of the beneficiary. The trustee might be liable for an abuse of the trust or confidence reposed in him, but the sale would not be invalid.

In *Cavender* v. *Heirs of Smith*, 1 Iowa 306, it was said, that "without pronouncing positively, we are inclined to the opinion, that gross inadequacy of price is not of itself sufficient to set aside a judicial sale, but that this may become an element quite controlling in connection with other circumstances." Further than this we need not go in this case, for, as was said in that, "under none of the cases to

which we have directed our attention do we regard the price paid in this so grossly inadequate, unaccompanied by circumstances of fraud, as to invalidate the title." The highest estimate placed upon the land at the time of the sale is $1,600; the lowest, $320; the average value according to the estimates of witnesses, being about seven hundred and seventy dollars. The land was sold in 1851 for $115; and in 1852 and 1853 lands were entered in the government land office in the immediate vicinity of this tract, lands that some of the witnesses testify to be equally valuable. The improvements were unimportant. Under this proof we could not say that the title was invalid because of the gross inadequacy of the price paid. *Cavender* v. *The Heirs of Smith, supra,* and the authorities there cited.

The point is made that the deed of trust is too indefinite as to the manner of advertising the property, "the newspaper" being the only designation of the paper in which the notice should be published; and that the instrument must be treated, therefore, as a mortgage, and should have been foreclosed as such. We think, however, it was perfectly competent for the parties to make just such an agreement as they did, and refer thus to the manner or medium of publication. The grantor, by this provision, left it to the trustee to select the newspaper. This he certainly had a right to do. There is no indefiniteness as to the *manner* of advertising, for that is to be by newspaper publication as contradistinguished from printed or written notices posted up in public places.

The only difference between this case and that of *Leffler* v. *Armstrong*, 4 Iowa 482 as to this point is, that there the power was given to third persons to sell, the notice to be given "by advertisement in some newspaper printed in Burlington, Iowa Territory." It is there said that the parties may legally insert a provision (in a mortgage or deed of trust) conferring upon a mortgagee or a third person the power to sell; and that the deed fully empowered the trustees named to foreclose by sale, without the aid of a court.

If the mortgagor, or grantor in a deed of trust, sees proper to leave the selection of the newspaper in which the notice shall be published, to the discretion of the mortgagee or trustee, without confining him to the limits of any particular county or city within which to make the selection, we know of no reason why we should prescribe a different manner, or why we should interfere with the terms of such a contract. If not impeachable for fraud, or some other cause outside of the instrument itself, it must be treated as the agreement of the parties and by which they should be bound. Of course there might be such mal-conduct on the part of the trustee in the selection of the newspaper as would render him liable, and render invalid the title in the hands of the holder with notice. That, however, would be a different question and one that does not arise here.

The other questions in the case either do not arise for the want of proper averments in the bill, or else are sufficiently disposed of by what has already been said.

Decree reversed.