Charles O. Gates, Appellant, *v.* William M. Dudgeon, as Executor of and Trustee under the Will of Richard Dudgeon, Deceased, Respondent.

1. Will — When Executor and Trustee, under a Power Given by Will, May Delegate Execution of Such Power. While an executor and trustee, under a power given him by a will, may not delegate the personal trust and confidence imposed upon him by the will and must exercise the judgment and discretion with which he has been invested in the execution of the power, yet having, with full knowledge of the facts, determined to sell real estate held by him as trustee, for a certain price, he may authorize his attorney to close the sale, and any contract entered into by the latter for the sale of the property at the price fixed is valid and binding upon such executor and trustee.

2. What Constitutes a Contract of Sale by Letter. Where a letter written to the trustee by the attorney for the purchaser, at the purchaser's request, offered to take the property held by the trustee at the price fixed by him in previous interviews with the purchaser, and pay the cash for it upon the delivery of the trustee's deed therefor, without warranty, the title to be taken in the name of an agent for the purchaser, which letter was answered by the attorney for the trustee, at his request, who stated that the property was held by adverse possession only and that there was no documentary title for it, and that if the purchaser would be satisfied with such title the trustee was ready to give him the usual trustee's deed without warranty, making no objection to conveying the title to the purchaser's agent, to which letter the purchaser's attorney replied, stating that such letter stated the matter just as he and the purchaser understood it and that the terms were those which the purchaser wished him to accept on his behalf, and that, assuming that the consideration for the property, as to which the letter was silent, was the same as that previously named by the trustee, the terms as to the consideration were also accepted on behalf of the purchaser, such letters con-

tain a full acceptance of the terms on behalf of the purchaser and constitute a completed contract in all of its essential details, and from that time became a binding contract upon the parties which could not be revoked by a subsequent letter of the trustee to the purchaser declining to sell or convey the property.

*Gates* v. *Dudgeon,* 72 App. Div. 562, reversed.

(Argued January 23, 1903; decided February 10, 1903.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered May 29, 1902, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*David C. Bennett, Jr.,* for appellant. The letters constitute a contract. The second letter is the offer and the fifth the acceptance. (*Peck* v. *Vandermark,* 99 N. Y. 29; *L. A. V. Co.* v. *Lorick,* 2 L. R. A. 211; *White* v. *Breen,* 32 L. R. A. 127; *Doughty* v. *M. B. Co.,* 101 N. Y. 644; *Newton* v. *Bronson,* 13 N. Y. 587.) A contract for the sale of land having been established, specific performance thereof was properly granted at the Special Term. (*Bostwick* v. *Beach,* 103 N. Y. 414; *Baumann* v. *Pinckney,* 118 N. Y. 604.)

*Daniel P. Hays* and *Ralph Wolf* for respondent. The written correspondence does not show a meeting of the minds of the parties upon all the propositions made in the offer of the plaintiff, nor is the contract sufficient under the Statute of Frauds. (*Cooley* v. *Lobdell,* 153 N. Y. 596; *Mentz* v. *Newitter,* 122 N. Y. 491; *M., etc., R. R. Co.* v. *C. R. Mill,* 119 U. S. 149; *C. R. R. Co.* v. *Dane,* 43 N. Y. 240; *Mahar* v. *Compton,* 18 App. Div. 536; *B. S. Co.* v. *M. C. Ry. Co.,* 134 N. Y. 15; *Brown* v. *N. Y. C. R. R. Co.,* 44 N. Y. 79; *Hough* v. *Brown,* 19 N. Y. 111; *Uhlman* v. *Day,* 38 Hun, 298; *Myers* v. *Prescott,* 59 Hun, 66; *S. G. W. Co.* v. *Barnes & Co.,* 86 Hun, 374.)

HAIGHT, J. The order of reversal does not state that the reversal was upon the facts. We must, therefore, assume that the facts as found by the trial court remain undisturbed and that the reversal was upon the law. (Code Civ. Pro. § 1338.)

This action was brought to compel the specific performance of a contract for the sale of real estate. The trial court has found as facts that Messrs. Hays, Greenbaum & Hershfield were the duly authorized attorneys for the defendant and that the defendant authorized his said attorneys to execute a contract for the sale of the property in question. It was further found as a fact that the said attorneys, on behalf of the defendant, " promised and agreed to sell to the said plaintiff the said real property described in the complaint herein for the sum of three thousand dollars, and, in consideration of the said promise by the said defendant, the said plaintiff promised and agreed to purchase the said premises at the said sum of three thousand dollars. And it was mutually promised and agreed by and between the said plaintiff and the said defendant that the deed for said premises should be delivered and possession of the said premises be given by the said defendant and the consideration paid by the said plaintiff as soon as the arrangements could be made thereto by the attorneys for the respective parties." It was further found as a fact that, after the making of the above-mentioned contract, the defendant gave notice to the plaintiff that he would not fulfill said agreement and would not deliver the deed nor the possession of the premises. The court found, as conclusions of law, that the agreement set forth constitutes a good and valid contract for the purchase and sale of the real property described in the complaint; that there was a note or memorandum of the contract in writing expressing the consideration, subscribed by the lawfully authorized agent of the grantor, sufficient to prevent the contract from being void under the provisions of section 224 of the Real Property Law, or any other similar provision of law, and that there was a breach of the contract on the part of the defendant. Judgment was directed in favor of the plaintiff for the specific performance of the contract.

It is now contended on behalf of the respondent that the order of reversal should be sustained, for the reason that the defendant, who was contracting as the executor under a power given by the will of Richard Dudgeon, deceased, could not delegate the personal trust and confidence imposed upon him by the testator, and that, therefore, the contract made by his attorneys was void. The case relied upon to sustain his contention is that of *Newton* v. *Bronson* (13 N. Y. 587, 593). The rule, doubtless, is correctly stated by DENIO, Chief Judge, in that case. An executor or trustee, to whom a power has been given by a will, may not delegate his judgment and discretion in the execution of the power, but having exercised the judgment and discretion with which he has been invested, we know of no authority which prohibits him from delegating to others the performance of his determination in regard thereto. The power of executors and trustees to delegate to this extent seems to be sanctioned by Chief Judge DENIO in the case alluded to. In the discussion of this question he says: "It is urged by the defendant's counsel that the contract of sale is void, for the reason that it was made by an agent of the defendant, according to the maxim '*Delegatus non potest delegare.*' The rule of law, no doubt, is that a power of this kind is a personal trust and confidence, which cannot be committed to any other than the grantee or donee of the power. (*Berger* v. *Duff*, 4 Johns. Ch. R. 369.) Besides this difficulty the defendant, in his answer, denies that the agents who executed in his name the contract which the plaintiff seeks to enforce, had any authority in fact from him to execute it and the plaintiff has failed to show any power of attorney or other express authority from him to them. The last objection is fully overcome by the ample and repeated acts of acknowledgment and ratification by the defendant of the contract in question in writing as well as by parol. The evidence upon this point was quite sufficient to enable the court to decide that the agents were authorized by parol to execute the contract and the parol authority under our statute and under the statute of Illinois, which is identical

in its provisions, would be sufficient. The contract must be in writing, but where it is signed by an agent, the power to execute may be by parol," citing numerous authorities. Again he says : " The reason of the maxim ' *Delegatus non potest delegare*,' however, is that in the case to which it applies the first constituent is a right to the personal judgment, care and skill of his agent. * * * In determining upon one or the other course he brought into exercise those personal qualifications on account of which he is presumed to have been selected by the testator. The law does not allow him to commit the power with which he is intrusted to another, for, perhaps, that other would bind the estate to a transaction which the former might not have considered advantageous and safe if he had acted directly upon it. The reason fails where the person actually intrusted with the authority has with the full knowledge of the facts ratified the act of one who assumed to act as his agent." It would seem, therefore, that if the executor or trustee, with full knowledge of the facts, should ratify the act of his agent or of the person acting for him as agent he could in the first instance after exercising his own judgment and discretion upon the proposed contract authorize an agent to carry it into execution. That is precisely what was done in this case. The plaintiff, through his attorney, under date of May 3, 1901, addressed a letter to the defendant, in which he offered to purchase the property in question for a sum specified. The defendant concedes that he received that letter and that he took it to his attorney and told him that his title rested on adverse possession, and on being advised by his attorney that he should ascertain whether the proposed purchaser would take that kind of a title he left the letter with his attorney, directing him to make answer thereto. Other evidence was produced on behalf of the plaintiff tending to show that the defendant had himself exercised his own judgment in determining the amount for which the premises should be sold, and that he had authorized his attorneys, Messrs. Hays, Greenbaum & Hershfield, to close the transaction. We, therefore, conclude that the power delegated to his attorneys did not

involve his judgment and discretion and that, therefore, the contract entered into by them for him was valid.

It is further contended òn behalf of the respondent that there was no valid contract entered into by him or his attorneys to sell the property described in the complaint. There was no formal written contract. What there is of the transaction is disclosed by the letters that passed between the parties. The first of these letters, as we have seen, bears date May 3, 1901, and was written by Mr. Tappan, the attorney for the plaintiff, and is addressed to Mr. Dudgeon, the defendant. From it it appears that the plaintiff and defendant had had previous oral conversations with reference to the purchase of this property. In it he says : " Mr. Charles O. Gates has asked me to write you and say that he accepts your terms for the sale of the meadow and beach property which you hold as trustee, west of Peacock lane and east of the Jacob property, or in other words, without going into a full description, the premises which you and he have been talking about for the past few months. I understand and Mr. Gates understands that your terms are $3,000 cash on delivery of deed ; said deed to be a usual trustee's deed without warranty. We shall take the deed quite soon, but if you would like to have us sign a regular contract in regular form we shall be glad to do so. Mr. Gates wishes the title to be held temporarily for him by some one in this office, and when the deed is made it may as well be made out to Edward R. Finch whose residence is New York city. Very Truly Yours, (Signed) J. B. C. Tappan." This letter was, as we have already seen, received by the defendant and taken to his attorneys to be answered, and they answered as follows : " New York, May 4, 1901. J. B. Coles Tappan, Esq., No. 51 Wall St., New York City. Dear Sir.— Your letter of the 3d inst., addressed to our client, Mr. William M. Dudgeon, has been handed to us for reply. The salt meadow and beach property at Peacock's Point, L. I., referred to in your letter, forms a part of the estate of Richard Dudgeon, deceased, and Mr. William M. Dudgeon, as the executor and trustee of this estate, is desirous

of disposing of this property. We have not examined the title to the property in question, but understand that it rests on adverse possession and that there is no documentary title to it. We, therefore, beg to suggest that you look into the title, and if your client is satisfied to take it, Mr. Dudgeon is ready to give him the usual trustee's deed, without warranty. Kindly let us hear from you as soon as possible, and oblige Very Truly Yours, Hays, Greenbaum & Hershfield." Thereupon, the plaintiff's attorney answered under date of May 6, 1901: "Gentlemen.— I have your letter of May 4th in reference to the Dudgeon meadow and beach at Peacock's Point, Long Island. Your letter states the matter just as Mr. Gates and I understand it, and the terms therein stated are the terms which Mr. Gates wished me to accept on his behalf. Your suggestion as to my looking into the title is also accepted. Your omission to state the consideration, $3,000, was, I presume, an inadvertence, and assuming this to be the case, the terms as to consideration also are accepted on behalf of my client. I assume that you will have no objection to Mr. Gates designating some person other than himself to take title in the first instance, as stated in my letter to Mr. Dudgeon. Very Truly Yours, (Signed) J. B. C. Tappan." No answer was made to this letter until May 13th, 1901, at which time Hays, Greenbaum & Hershfield addressed a letter to Mr. Tappan as follows: "Your letter of the 6th instant in reference to the Dudgeon meadow and beach at Peacock's Point, received. We shall be pleased to have you confer with our Mr. Hershfield on the subject generally, at your convenience." Thereupon, and under date of May 23d, 1901, Mr. Tappan inclosed a form of deed with the following letter: "H. Herschfield, Esq., 141 Broadway, New York. Dear Sir.— I enclose for your examination a draft of the proposed deed from Mr. William M. Dudgeon to Mr. Gates' representative, which I have drawn as I am familiar with the description and locality of the premises. Very Truly Yours, (Signed) J. B. C. Tappan." And underneath the signature the following: "I think you may find my draft useful in

some way. We can close any time on short notice. J. B. C. T." Here the matter appears to have rested until the third day of June, at which time the plaintiff himself wrote the following letter to the defendant: " Lawyers are, as we well know, proverbially slow, and it does seem quite impossible for me to get any reply to my letter of May 23d, accepting your proposition regarding the sale of the three-acre piece of beach at Glen Cove. I am quite sure if you knew how much this delay hinders me in carrying out some plans you would see to it that the proper papers were signed at once. I should be pleased to see you if necessary and go over the matter, though I suppose everything is practically settled excepting the mere formal part of it. If you think it well to talk it over I shall be glad to make an appointment with you any day by telephone to this office where I am most of the day. I trust that the sickness in your family has all departed and that you and your good wife are quite recovered from the anxiety incident upon such serious illness. With kind regards to Mrs. Dudgeon and yourself, I am Very Sincerely Yours, (Signed) C. O. Gates." To this the defendant answered, under date of June 4, 1901: " Your letter of the 3d inst. is at hand. After a full consideration of the matter, I have come to the conclusion not to sell the property for sometime to come. You will appreciate the fact that I am acting in the matter in a representative capacity, having but a fractional interest of my own therein, and that I have not the sole voice therefore.

" I trust you have not been greatly inconvenienced by any delay in obtaining this, my final answer.

" Our little one is well on the road to recovery and Mrs. Dudgeon joins me in thanking you for kind inquiries and with our best wishes I am Yours Very Truly, (Signed) Wm. M. Dudgeon. Mr. C. O. Gates, 100 William Street, New York."

The trial court has found that these letters constituted a complete and valid contract. The learned Appellate Division appears to have reached a different conclusion. It is, undoubtedly, true that the courts must take into con-

28

sideration all of the correspondence upon the subject in determining the question as to whether the minds of the parties had met upon the essential terms of the contract. The first letter of the plaintiff, under date of May 3, 1901, contains a specific offer on the part of the plaintiff to pay $3,000 cash on the delivery of a deed of the property without warranty. It expresses the wish of the plaintiff to take the title in the name of one Edward R. Finch. The answer of the defendant, through his attorneys, calls attention to the title of the property and then concludes to the effect that if Mr. Gates is satisfied to take such a title "Mr. Dudgeon is ready to give him the usual trustee deed without warranty." This letter was written in answer to that of the plaintiff. No objection is made to the expressed wish of Mr. Gates that the title be taken in the name of Finch. If, therefore, this was an essential feature of the contract we think that the defendant acquiesced in the request. It is true that the purchase price was not mentioned in this letter. It was, however, stated in the preceding letter and the answer indicates that if the plaintiff is willing to accept such a title as the defendant has to convey the defendant is willing to give it to him, and we think the letter clearly implies for the consideration named in the previous letter. The question, however, at this point was left open, as to whether the plaintiff was willing to accept the title and to this he, through his attorney, replies on May 6th that "Your letter states the matter just as Mr. Gates and I understand it, and the terms therein stated are the terms which Mr. Gates wished me to accept on his behalf." Here we have a full acceptance of the terms on behalf of the plaintiff, and it appears to us that it concluded a completed contract in all of its essential details, and from that time became binding upon the parties. We have looked into the correspondence which followed, but find nothing that indicates that the minds of the parties had not met upon the propositions under consideration at the time that the letter of May 6th was sent until the final letter of the defendant under date of June 4th, in which he declines to sell or con-

vey the property, and, therefore, are of the opinion that the conclusions reached by the trial court were correct.

The order of the Appellate Division should be reversed, and judgment of the trial court affirmed, with costs to the plaintiff in this court and the Appellate Division.

PARKER, Ch. J., BARTLETT, MARTIN, VANN, CULLEN and WERNER, JJ., concur.

Order reversed, etc.