EDWARD B. McLEAN *v.* JULIUS I. PEYSER
[No. 24, April Term, 1935.]

2

*Decided May 23rd, 1935.*

The cause was argued before URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Edgar Allan Poe,* with whom was *James M. Beck* on the brief, for the appellant.

*Simon E. Sobeloff,* with whom was *Wm. C. Sullivan* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

About nineteen years ago John R. McLean, of Cincinnati, died, leaving a will. Amongst his possessions was the newspaper known as the Washington Post, in which he owned a majority of the stock, the balance having been

acquired after his death by the trustees of his estate. By item X of his will he said: "I direct that no sale of any of the newspaper properties or of any interest therein belonging to me at the time of my death shall be made by my executor or trustee until the same shall have first been approved in writing by my friend, Francis T. Homer, of the City of Baltimore, in the State of Maryland, provided he be living and capable of attending to business at the time thereof; or, if he shall fail to approve, then without the written approval of my son, Edward B. McLean, (the appellant). I further direct that so long as my said friend, Francis T. Homer, shall be living and capable of attending to business, my Executor and Trustee (American Security and Trust Company of Washington, D. C.) shall seek and obtain the benefit of his judgment in all matters pertaining to the control and management of my estate, including the management of my said newspaper interests and all other matters connected with the administration of the trusts by this, my last will and testament created."

Before the transaction involved in this suit, Mr. Homer had died. The American Security & Trust Company of Washington, D. C., had been appointed trustee under the will of John R. McLean, and later Edward B. McLean was appointed by the Supreme Court of the District of Columbia as cotrustee, and together they operated the Washington Post as a daily newspaper. The paper had not been paying since the year 1924, and in 1931 the trustees decided it should be sold. Shortly after this decision by the trustees, Edward B. McLean, the defendant (appellant) orally agreed with the plaintiff, Julius I. Peyser, an attorney, of Washington, D. C., that if the latter should produce a purchaser at a price satisfactory to the trustees and to the court having jurisdiction of the trust, he should be paid a commission of five per cent on the first $500,000 and two and one-half per cent on the balance of the purchase price, the commission in this case amounting to $87,500. The plaintiff did produce a purchaser in the person of David Lawrence, whose offer

was made in the name of David Lawrence, Inc., the corporation by which title to the Post was intended to be taken. The Lawrence offer was to buy the physical assets and good will of the Post for $3,000,000, with a cash payment of $800,000, the balance to be secured by a mortgage, excluding the real estate, payable in twenty years, with certain sinking fund payments, the minimum amount of which would aggregate $800,000. The plaintiff, Peyser, had theretofore made some tentative offers to the corporate trustee, none of which were satisfactory, and told its president that he would expect a commission on the sale. Later the Lawrence offer of $3,000,000 was taken to Mr. Corcoran Thom, the president of the corporate trustee, by the plaintiff, and it was then he advised Mr. Thom that he expected the commission here sued for.

In April, 1931, the plaintiff had the defendant write a letter to his cotrustee as follows:

"I want to place myself on record as one of the trustees of my father's estate, that a price of three million dollars should be carefully considered and not lightly dismissed. * * * Please discuss this question with my counsel, Major Julius I. Peyser, who will be very pleased to arrange for a conference to consider the sale of the Washington Post.

"2. The price of three million for the Washington Post as aforementioned, of course includes five per cent commission to the broker for the first $500,000 and two and one-half per cent commission for all over and above that amount, this with the understanding that it is sold to the person with whom the broker first entered negotiations."

It does not appear from the record that the trust company agreed to the payment of the commissions as stated in the letter, for, by its letter to Mr. McLean of June 4th, 1931, it said they seemed "to be quite steep" and "that 2 per cent would be ample, or a total of $60,000." Later,

however, it appeared to have acquiesced, and it was represented to the chancellor that the Lawrence offer would net the estate $3,000,000 less $87,500.

It does not appear exactly when, but early in June, 1931, the trustees filed a petition which would be known here as a "report of sale," wherein they recited that they had this $3,000,000 offer for the Post from David Lawrence, Inc., and prayed "that, after receiving the reports of the guardians *ad litem* of the minor children of Edward B. McLean, (who were the remaindermen of the trust), and after hearing and consideration, the court may approve their acceptance of the offer of David Lawrence, Inc. for the purchase of the Washington Post and may authorize the consummation of the sale of said newspaper, its properties and franchises in such manner as the trustees and their counsel may deem for the best interest of the estate."

In the Lawrence offer there was this provision: "That before the consummation of such sale the necessary steps be taken by you, without cost to the undersigned company or its corporate assignee, to obtain, if possible, the approval or ratification by the proper court of the District of Columbia of the sale of such properties to the undersigned company or its corporate assignee for the considerations herein named, and to pass to the purchaser the complete, unincumbered title to all such properties."

The petition, praying the approval by the court of the Lawrence offer, was set down for hearing on the 15th day of June, 1931, there being present and participating in the proceedings, in person or by counsel, the trustees, Mrs. Edward B. McLean, wife of the defendant, the guardians *ad litem* of the minor children of the defendant, who were also the remaindermen under the John R. McLean will, the plaintiff, and the purchaser. Mr. William Randolph Hearst, another prospective buyer, was represented by counsel. There was some evidence taken respecting the Lawrence offer, and more discussion in regard to it. The Hearst offer was not in any definite shape except that in the gross amount it equalled the

6

Lawrence offer. The guardians *ad litem* of the McLean children suggested that the Lawrence offer to buy the physical assets and good will of the Post be amended to an offer for the capital stock of the corporation, subject to the payment by the trustees of the debts and some other conditions not necessary to relate here. Counsel for Mr. Lawrence thought this could be done, and in order to give Lawrence and Hearst time to put their propositions for the purchase of the stock into shape, an adjournment was taken for two days, or until June 17th, 1931. On the latter date the same parties were again in court, when the amended proposals of David Lawrence, Inc., and of the Washington Times (Hearst) were submitted, and the testimony of Mr. Thom, president of the American Security & Trust Company, was taken, which was in effect that of the two bids, he considered the Lawrence offer the better, this conclusion being based largely on the security tendered. A further postponement of consideration of the Lawrence and Hearst proposals was suggested and argued, and the time was extended to June 26th, 1931. In the meantime, both bidders amended their offers, which were submitted to the corporate trustee, Mr. McLean being ill during all this time, and on June 26th, 1931, a hearing was had, at which time the corporate trustee, through Mr. Thom, recommended the acceptance of the Hearst offer, for the reason that in his opinion it offered the better security for the deferred and final payments of the purchase money. At the conclusion of this hearing, Mr. McLean, by his counsel, presented the following communication from Edward B. McLean, the defendant in this case:

> "Since the original offer of Mr. David Lawrence was considered by me and the original petition submitting that offer was filed in this proceeding, I have given consideration to present conditions and have carefully studied the testimony which was presented to the court on hearings had upon the 15th day of June and the

17th day of June, 1931. With deference to the Court, I have decided to and do hereby withdraw my approval heretofore given to the acceptance of the first offer of Mr. David Lawrence; and I do not approve, either individually or as trustee, of the acceptance of either the second or amended Lawrence offer, or the Hearst offer.

"Further, I do not at this time give my approval to the sale of the interest of the John R. McLean estate in the newspaper property known as the Washington Post, as required by the tenth paragraph of the will of said John R. McLean."

Thereupon, counsel for Edward B. McLean asked that the proceeding be dismissed, and although there is no formal order in the record dismissing the petition of the trustees, there does appear the chancellor's statement, "that there is not now anything pending before the court."

This was followed by a suit brought in the District of Columbia by Julius I. Peyser, the plaintiff here, against the American Security & Trust Company to recover $87,500 claimed to be due him, as commission for obtaining a purchaser for the Washington Post, for the very services here claimed against John R. McLean. The jury were instructed to find for the defendant and on appeal to the Court of Appeals of the District of Columbia the judgment of the trial court was affirmed. 63 App. D. C. 299, 72 Fed. (2nd) 92, 95. Edward B. McLean was not joined as defendant in the suit. Code, art. 50, sec. 2.

Suit was then brought by Albert E. Peyser, in the Circuit Court for Baltimore County, against the defendant, Edward B. McLean, then a resident of Baltimore County, the declaration setting up the contract heretofore described, and the securing of a purchaser, David Lawrence, Inc., which made the trustees of the John R. McLean estate an offer as a result of the efforts of the plaintiff, which they had accepted, and that "the de-

fendant and his co-trustee further promised and undertook to and with the plaintiff, that they would take all necessary steps to obtain, if possible, the approval or ratification by the proper court of the District of Columbia of the offer of said David Lawrence, Incorporated, so accepted by the trustees as aforesaid," and that thereafter they filed in the Supreme Court of the District of Columbia their petition praying the approval of the said Lawrence offer; that notwithstanding the promise and understanding of the defendant and his cotrustee to the contrary, they made no effort to obtain the ratification or approval of the offer of David Lawrence, Inc., "procured and obtained by the plaintiff as aforesaid, but on the contrary the defendant by his acts and conduct prevented such approval or ratification by the Court," and "the plaintiff thereby lost the commission which he otherwise would have received."

The declaration does not state, but the briefs show, that suit had been brought by the plaintiff, Peyser, against the American Security & Trust Company in the Supreme Court of the District of Columbia on the same grounds now alleged against the other trustee, John R. McLean, and from a judgment on a directed verdict for the defendant an appeal was taken to the Court of Appeals of the District and the judgment affirmed. Of the opinion in that case more will be said later.

At the trial of the case in Baltimore County, the plaintiff offered four prayers, of which the first was refused and the others granted. The defendant offered three prayers, all of which were refused, and the only exception taken by the defendant was to the rulings on the prayers adverse to him. From a judgment for the plaintiff, the defendant appeals.

The charge is that the defendant failed to perform his "promise and undertaking to take all necessary steps to obtain, if possible, the approval of the Court of the offer procured by the plaintiff" whereby the plaintiff "lost the commission which he otherwise would have received."

It is not disputed that the plaintiff was the procuring cause of the Lawrence offer of $3,000,000 for the "Washington Post," and the trustees submitted this offer to the Supreme Court of the District of Columbia, as they were bound to do under the terms of the decree of that court assuming jurisdiction of the trust (*Gottschalk v. Mercantile Trust & Deposit Co.*, 102 Md. 521, 526, 62 A. 810; *Kramme v. Mewshaw*, 147 Md. 535, 547, 548, 128 A. 468), by which decree Edward B. McLean was appointed cotrustee with the American Security & Trust Company, which had been designated as sole trustee by the will of John R. McLean. The fact that the offer so secured and accepted may have been changed or modified before final acceptance of the purchaser by the seller would not deprive the broker of the right to his commission, if he was the procuring cause of the offer so made and accepted. *Stokes v. Wolf*, 137 Md. 393, 412, 112 A. 566.

Neither side has questioned or argued the right of a conventional trustee to employ a broker or agent to secure a purchaser for property in the hands of such a trustee. The inference to be drawn from the opinion in the case of *Peyser v. American Security & Trust Co.*, 63 App. D. C. 299, 72 Fed. (2nd) 92, 95, is that, if the issue of fact raised by the plaintiff had been sustained, the claim of the broker would have been charged to the corpus of the estate. It is a general rule that trustees "must execute the trust themselves and not through the instrumentality of an agent." "But there are exceptions arising from necessity or from the common custom of mankind in which the trustee is entitled to employ an agent." 2 *Story Eq. Jur.* (13th Ed.) sec. 1269; 1 *Beach, Mod. Eq. Jur.*, secs. 251, 252; *Perry on Trusts* (4th Ed.) sec. 404. Or, as expressed in 3 *Pomeroy's Eq. Jur.* (3rd Ed.) sec. 1068, a trustee "may act through agents in his administrative operations whenever such a mode of dealing is in accordance with the ordinary course of business." *In re Belchier*, Amb. 218, 27 Eng. Reprint, 144; *Speight v. Gantt*, 22 Ch. Div. 727, 9 A. C. (H. L.) 1; *Anderson v. Roberts*,

147 Mo. 486, 48 S. W. 847; *Meck v. Behrens,* 141 Wash. 676, 252 P. 91; note to 50 *A. L. R.* 207.

It has been held that a trustee with power to sell may engage an agent or broker to produce a purchaser, but that is where the employment or authority ends, unless a contract between the agent and purchaser is subsequently ratified by the fiduciary, all on the theory that a ministerial act involving the exercise of no discretion may be delegated. *Keim v. Lindley (N. J. Ch.)* 30 A. 1063; *Keim v. O'Reilly,* 54 N. J. Eq. 418, 34 A. 1073; *Coleman v. Connolly,* 242 Ill. 574, 90 N. E. 278; *Markel v. Peck,* 144 Mo. App. 701, 129 S. W. 243; *In re Bohlen's Estate,* 75 Pa. 304, 317; *Newton v. Bronson,* 13 N. Y. 587; *Singleton v. Scott,* 11 Iowa, 589; *Williams v. Woods,* 16 Md. 220, 249. When such expenses are, or are about to be, incurred, the trustee runs the risk of becoming personally liable therefor unless forearmed with an order authorizing the expenditure, and then he is only entitled to reimbursement on the theory that it is for the benefit of the estate. *Hatton v. Weems,* 12 G. & J. 83, 108; *Gill v. Carmine,* 55 Md. 339; *Abell v. Brown,* 55 Md. 217, 225; *Knipp v. Bagby,* 126 Md. 461, 95 A. 60; *Karr, Hammond & Darnall v. Shirk,* 142 Md. 118, 120 A. 248. As there is no contention in this case of the right of the trustees to make such a contract with a broker, nor of the reasonableness of the amount, there is nothing for this court to decide with respect to the authority of the trustees to enter into such an agreement.

The main question here is whether there is legally sufficient evidence that the defendant, Edward B. McLean, has breached his contract as one of the trustees of the estate of his father, so as to make himself liable in damages to the plaintiff, Julius I. Peyser.

It is conceded that, regardless of every other consideration, if the sale made to David Lawrence, Inc., was one which the court having jurisdiction over the trust would have approved, there is liability. But the plaintiff's contention is, of necessity, that there would have been such approval if the defendant had not "capriciously"

withdrawn his consent and "refused to concur in any sale being made," and that thus the plaintiff was deprived of his commission on the Lawrence sale. 9 *C. J.* 623; *Richards v. Jackson*, 31 Md. 250; *Melvin v. Aldridge*, 81 Md. 650, 658, 659, 32 A. 389; *Carrington v. Graves*, 121 Md. 567, 573, 89 A. 237.

In the case of *Peyser v. American Security & Trust Co., supra,* after stating in detail all that had occurred in the Supreme Court of the District of Columbia with reference to the Lawrence and Hearst offers for the Washington Post, and in a suit wherein enforcement of the same broker's contract was sought against the defendant's cotrustee, the Court of Appeals of the District of Columbia said: "Giving due effect to all that is shown above, we are unable to say the failure to consummate the sale resulted from any act of appellee. The McLean estate was being administered under the direction and control of the equity court. The trustees were its officers and bound by its orders and decrees. All of counsel agreed that the sale could not be consummated, except in the event, first, of the approval of McLean and his cotrustee, appellee, and secondly, the approval of the court. The trustees did approve the original offer of Lawrence and did present it to the court in good faith, with a recommendation that it be accepted. Doubtless, if the matter had been then acted on, authority would have been given the trustees to accept the offer, but other interests in the McLean estate objected and suggested changes, and so the matter went over, and in the final hearing McLean, so far as the record shows, capriciously withdrew his approval of the offer or of any offer. His attitude was one of opposition to any sale, and since in the opinion of all parties in interest no sale could be consummated without his consent, and the court adopting this view, obviously it was without power to make the sale."

The plaintiff's position seems to be that, regardless of the Hearst offer for the Post, liability attaches to the defendant; that the Supreme Court of the District of Columbia would have approved the Lawrence offer if the

defendant had not withdrawn his approval, and cites and quotes at great length from the opinion of this court in *Loft, Inc., v. Seymer,* 148 Md. 638, 645, 129 A. 911, 913, in support of its contention. In that case a lease had been made, subject to the approval of the court, to the Mc-Crory Stores Corporation, when Loft, Inc., made an offer to lease at a higher rental, of which this court said: "The full purport of the contention seems to be that up to the moment of final ratification an acceptance by a trustee of an offer to purchase is without any effect, and that a trustee can take no action which will give such an offer any standing greater than that of a bid. Such a rule would render a trustee a very ineffective aid to the court for dealing with possible purchasers of property, and would restrict the court itself to a procedure unsuited for dealing with some common conditions." The trouble about the application of this rule to the present case is that we are not passing upon the action of the Supreme Court of the District of Columbia in entertaining other offers than that of Lawrence, Inc., for the Washington Post; or whether or not it was right in so doing. The fact is that it did extend the hearing on the Lawrence offer to permit others to be made and studied, with the result that one of the trustees, the American Security & Trust Company, advised the court that, while the gross amount of the Lawrence and Hearst offers was the same, the latter was the better secured and this was a matter of very vital concern where the payment of the major parts of both bids was to be long deferred. The court is not only concerned with the income to the *cestui que trust,* but with the preservation of the property for the remaindermen as well. *McCrory v. Beeler,* 155 Md. 456, 464, 142 A. 587.

One of the difficulties we have here is to disassociate what was said and done by the Court of Appeals of the District of Columbia in the case of the cotrustee, from what was expected or required of the defendant in this case. In that case, *supra,* the Court of Appeals said:

"The trouble, as we see it, with appellant's case is that he loses sight of the fact that the parties to this controversy all dealt with the subject-matter of the contract as a trust property under the direction and administration of the court. Considered in that aspect, all agreed that the proposed sale should receive the court's approval. That it never did is admitted. In view of that fact, appellant had the burden of showing bad faith, or conduct on the part of appellee so capricious as to amount to bad faith. * * *

"To sustain this burden appellant relies on the statement of Thom that an analysis of the Hearst offer with the Lawrence offer was favorable to the former. In this, as we think, appellee only did its duty as trustee. Its silence in the circumstances would have been to disregard its duty. Absolute good faith and frankness were due from appellee to the court, and fidelity and prudence to the trust. In none of these respects was there shown to be default on its part."

In the trial of the suit of the plaintiff here against the defendant's cotrustee, according to the opinion of the Court of Appeals of the District of Columbia, *supra,* the trial judge said the plaintiff "would not be entitled to the commission if the consummation of the sale was frustrated by action of the court after recommendation by the trustee, and he held, as a matter of fact, that appellee had recommended the sale and that its failure was due to the refusal of the court to give its approval."

It was the duty of the trustee fully to inform the court of the offers that had been made for the trust property, and in view of the fact that the trustee had informed the court that there was a better offer than the one formerly made by David Lawrence, Inc., and this conduct of one of the trustees had been approved by the appellate court of the District of Columbia as proper, how can it now be said that the first Lawrence offer would have been approved by the chancellor, whose duty it was to pass upon and either approve or disapprove the offer? *McCrory v. Beeler,* 155 Md. 456, 460, 142 A. 587. The

natural inference from the opinion of the Court of Appeals of the District of Columbia is that the chancellor would not have approved the Lawrence offer after the corporate trustee's statement that the Hearst was the better offer, and it is not for us to say whether it should have approved it. Assuming, which we do not here concede, that John R. McLean personally had the right of approval of any offer, after other offers were invited or entertained, no court would have approved an offer when there was a better one proposed. The chancellor could have acted upon the first Lawrence offer, but he yielded to the suggestions made by other interested parties, remaindermen and bidders, all with a view to obtaining a better price or better secured purchase for the trust property than the one made by David Lawrence, Inc. Whether the Hearst offer was better or worse than the Lawrence offer is a matter with which we are not concerned. One of the trustees, the one named in John R. McLean's will, said it was better, and the court should have been influenced by what it said then and not by what we may think now. Furthermore, it is our opinion that the first Lawrence offer never was withdrawn by Edward B. McLean, because he did not have the power, once it was formally submitted to the court, to withdraw his approval. That could not be done without the court's assent. *Gates v. Dudgeon,* 173 N. Y. 426, 66 N. E. 116. When that petition for approval or report of sale was made, others became interested, namely, three infant remaindermen, wards of the court, whose interests in the corpus had to be considered and could not be ignored, and, in addition to that, the original trustee and Edward B. McLean, the newly appointed cotrustee, had subjected themselves as trustees to the jurisdiction of the court. When Edward B. McLean became a trustee, his personal approval of any sale of the newspaper as required by his father's will no longer became necessary. The father's direction gave, first, Mr. Homer, and afterwards, the son, the right of approval of any sale to be made by the trustee under the

will. It never contemplated a dual character for the son, whose personal privilege was merged in the fiduciary capacity when he became trustee. The court had jurisdiction of him, and once he assented to a sale, only the court could release him.

Our opinion is, not only that the Supreme Court of the District of Columbia did not approve the sale to David Lawrence, Inc., but that under the facts, with what the corporate trustee said was a better offer as an alternative, the court would not have approved the Lawrence offer, and in this we agree with Judge Luhring, who tried the case of the plaintiff against the American Security & Trust Company.

As this conclusion means that the defendant's prayer for a directed verdict for want of legally sufficient evidence should have been granted, it becomes unnecessary to discuss the rulings on the other prayers.

*Judgment reversed, with costs.*