## JOSEPH GOTTSCHALK *vs.* THE MERCANTILE TRUST AND DEPOSIT COMPANY.

*Trusts—Power of Equity Court to Designate the Banks in Which Trustees Should Deposit Funds—Appeal.*

When a Court of equity has assumed jurisdiction over the managment of a trust estate, that Court has the right to designate the banks in which the trustees should deposit the current funds of the estate.

The order of a Court of equity designating the banks in which trustees should deposit the funds of an estate, there being administered, is discretionary in its nature, and no appeal lies therefrom.

Appeal from the Circuit Court of Baltimore City (HARLAN, C. J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, SCHMUCKER and BURKE, JJ.

*Wm. Pinkney Whyte,* for the appellant.

*Edwin G. Baetjer* (with whom were *Richard M. Venable* and *Charles McH. Howard* on the brief), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court of Baltimore City designating the banks in which the appellant and appellee, as joint trustees under the will of the late Albert Gottschalk should deposit the cash funds of the trust estate from time to time in their hands. The appellee insists that the order of the Circuit Court is not reviewable on appeal because it was an interlocutory and discretionary one.

It is not necessary at this late day to cite authorities in support of the well-settled doctrine that an appeal will not lie from an order or decree passed in the exercise of an undoubted discretion of the lower Court. But the question whether the subject-matter of the order or decree was within the area of the discretion of the Court which passed it is open to examination upon an appeal in the same case, for a Court cannot improvidently extend the exercise of its discretion to matters which lie beyond its legitimate reach. *In re Farmers Loan Co. Petitioner*, 129 U. S. 206, 215; *Cecil v. Negroes*, 14 Md. 68–69.

The appellant does not deny the soundness of these propositions but contends that the will of Mr. Gottschalk conferred upon the trustees of his own selection the discretionary power of selecting a depository for the trust funds and that this discretion did not pass from them to the Circuit Court as an incident of its supervisory jurisdiction over the administration of the trusts in this case. The fundamental question therefore presented by the record is whether the order appealed from was passed in the exercise of an undoubted discretion of the Circuit Court.

Albert Gottschalk by his last will and codicils, admitted to probate on October 18th, 1898, gave the bulk of his estate valued at more than a million dollars to his son Joseph and The Mercantile Trust and Deposit Company of Baltimore in trust for the benefit of his wife and children as therein set forth.

During the continuance of the trusts thus created the trustees were directed to collect the income arising from the trust property and make disposition thereof in accordance with the terms of the will. One of the codicils to the will provided that in the event of the death of the testator's son Joseph his other son Levi should be substituted in Joseph's place as trustee and in the event of the death of both of them a majority of the devisees and legatees of the will, counting them *per stirpes*, should have the power to appoint a successor to act with the trust company, and should also have the power from time to time to fill in like manner any vacancy occurring in the trusteeship.

By the eighteenth clause of the will the testator conferred upon the trustees powers of management, of the estates committed to their charge, as follows : "I further provide that the said trustees or whoever may be trustee or trustees hereunder shall have and they are hereby invested with full powers and authority during the continuance of any of the trusts under this will to sell absolutely and in fee-simple on such terms as they may see fit, to demise and lease for nine years renewable forever or for any other term, to exchange, transfer, convey, assign and dispose of all or any part of the property hereinbefore described and of the property which by increase, substitution or reinvestment, may at any time be held by such trustees so long as the same may be held by them under the provisions of this will, and also to make any investments and reinvestments of said trust property which they may think proper, and also to make, execute and acknowledge any deeds, leases or instruments of writing whatever which may be necessary or proper for the execution of the powers hereby granted." By the same clause of the will the investments and reinvestments of trust funds were required to be made and held under the trusts of the will and purchasers and other persons are relieved from obligation to see to the application of purchase-money or other money that may be paid to the trustees.

While the personal estate of the deceased was in process

of administration in the Orphans' Court the testator's son Levi Gottschalk filed a bill of complaint in the Circuit Court of Baltimore City, against the trustees under the will and the parties interested in the trust estate as beneficiaries, praying that the Court assume jurisdiction of the trusts of the will, and that they be administered under its direction and supervision. Both the trustees and the *cestuis que trust* acquiesed in the prayer of the bill and a decree was passed by consent by which the Court assumed jurisdiction of the trusts and directed them to be executed under its supervision.

Some time thereafter, on the 18th of July, 1894, the Mercantile Trust Company, one of the trustees under the will, filed a petition in the case in which the trusts were being administered asking the Court to designate some depository or depositories for the uninvested current funds of the estate. The trust company in this petition, after referring to the creation of the trust and the assumption of jurisdiction of its execution by the Court, stated that its co-trustee Joseph Gottschalk had been depositing to the joint credit of the trustees the cash trust funds from time to time coming to his hands, consisting of principal awaiting investment and income awaiting distribution and at times amounting to from $50,000 to $100,000, in the Fidelity and Deposit Company of Maryland which allowed three per cent interest on the balance of the account; that the petitioner, believing that so large a current deposit ought not to be maintained except with the authority and under the direction of the Court, had applied to its co-trustee to unite with it in a report of such deposit to the Court and an application to it for instructions in reference to the deposit, but he had declined to unite in such an application saying that there was no occasion to make it. The petition also alleged that the petitioner had deposited to the joint credit of the trustees the cash trust funds, from time to time coming to its hands, in the National Bank of Baltimore, which allowed two per cent interest on the balance of the account, which the petition averred was a fair current rate of interest for such deposits. It further alleged that Joseph Gottschalk

its co-trustee objected to the deposit in the said national bank
on account of the low rate of interest allowed by it and had
always suggested the deposit of the entire fund in the Fidelity
and Deposit Company and for the purpose of enforcing his
objections had recently refused to sign a check on the account
in said bank to be used in payment of the distribution of cer-
tain income which had been deposited therein.   The prayer
of the petition was for an order of Court (1) instructing the
trustees with reference to their deposit in the Fidelity and De-
posit Company and designating some depository or deposi-
tories for the funds of the estate and (2) approving the de-
posits of trust funds made by the petitioner in the National
Bank of Baltimore.

Joseph Gottschalk, the other trustee, who is the present
appellant, answered the petition admitting the deposit by him
as alleged of the current funds of the trust estate in the Fi-
delity and Deposit Company and his refusal to recognize the
deposit of any of the trust estate funds in any national bank,
and asserting in justification of his action that the testator in
his lifetime had kept his account in the Fidelity and Deposit
Company, and that the estate would suffer serious loss by ac-
cepting a lower rate than three per cent interest on the large
sum which from the size of the estate and the nature of the
trusts would currently be on hand in cash.   He also insisted
in his answer that the Fidelity and Deposit Company was a
thoroughly reliable corporation, and that by the terms of its
charter, guardians, receivers and others having the custody of
bonds, securities or money were authorized to deposit the same
with it for safe keeping.   He further answered that all of the
beneficiaries of the estate, save one, who was in Europe, had
united in a letter to his co-trustee protesting against accepting
less than three per cent interest on the trust funds while a re-
sponsible company was willing to allow that rate for them.

The issue made by the petition and answer having come to
a hearing, and the parties having failed to act upon a sugges-
tion from the Court that they try to agree, subject to its ap-
proval, upon depositories for the trust funds, the order appealed

from was passed on August 4th, 1905, approving the deposits which had been made *pendente lite* in the National Bank of Baltimore, but directing the trustees to deposit all trust funds, then in or thereafter to come in their possession or control, in one or two of the three prominent national banks which were named in the order, but did not include the National Bank of Baltimore.

We think the Circuit Court in passing this order acted within its jurisdiction and in the exercise of well recognized discretionary power. If trustees undertake to administer their trust without seeking the aid and protection of any Court they may exercise the discretion, and execute the powers conferred on them by the instrument creating the trust and equity will not generally interfere with them so long as they act in good faith and with fair discretion. But if, upon their application or that of their *cestui que trust* with their assent, a Court of equity by an appropriate decree assumes jurisdiction of the trusts and directs them to be executed under its direction and supervision, the authorities agree that the situation of the trustees is thereby in so far changed that they must thereafter secure the sanction or ratification of the supervising Court for the successive steps of their administration of the trusts. *Perry on Trusts*, sec. 474; *Lewin on Trusts*, 11 ed., p. 753.

This Court recently had occasion to consider the effect, upon the extensive and important powers conferred by the will of the late Arunah S. Abell on his sons as trustees, of the assumtion by a Court of equity of jurisdiction of the trusts of that will. *Abell* v. *Abell*, 75 Md. 64. It was said in that case "All apprehension, if any exist, as to the arbitrary exercise of the very large discretionary powers given to the trustees may now be dismissed. For the trustees themselves, recognizing the great difficulty and delicacy in performing some of the duties imposed upon them, have voluntarily subjected themselves to the jurisdiction of a Court of equity. And whatever their powers may be under the will, if the trusts created thereby are before such a Court 'and a decree has been made, the powers of the trustees are thenceforth so far changed that they

must have the sanction of the Court for all of their acts.' 2 *Perry on Trusts*, sec. 474, and authorities there cited."

The precise area and limits of the jurisdiction acquired by a Court of equity over the administration of a trust thus subjected to its supervision have never been fixed, but must necessarily depend to some extent upon the nature of the trusts and the character of the powers conferred upon the trustee. It may for instance be doubted if a Court of equity would, except under very special circumstances, compel a trustee to execute a power which the instrument conferring it declared should be exercised by him or not according to his own volition or at his own discretion. Thus in *Tempest* v. *Lord Camoys*, 21 Chy. Div. 571, the will gave to two trustees power "in the exercise of their absolute discretion" of selling real estate and investing proceeds in other real estate. It also gave them power "at their absolute discretion" to raise money by mortgage for the purchase of real estate. The trust being in process of administration under the supervision of equity the Court refused to compel one of the trustees against his own judgment to unite with the other trustee in mortgaging the real estate, and with the proceeds of the mortgage and other trust funds making a proposed purchase of other real estate.

Nor does a Court of equity ordinarily in any form of proceeding control the exercise by a trustee or other fiduciary of a special power strictly personal in its nature such as the power sometimes given to a parent who is a life tenant or a trustee for his children to determine the proportions in which the trust fund is to be divided between them or at what age they shall receive their respective shares of the estate absolutely, or whether the income shall be paid over to them or expended by their trustee for their support and maintenance. Thus in *Addison* v. *Bowie*, 2 *Bl. Chy.* 618, the will gave to the testator's son-in-law William Bowie an estate for his life with power to designate in his discretion any one or more of his children by the testator's daughter to take the remainder in fee stating that this uncertainty of designation among the

children was intended as a motive to good conduct in them all. Chancellor Bland held that the discretion was to be exercised arbitrarily by the father because of the nature of the power.

The present case is however not, strictly speaking, one of the control by the Court of the exercise of a power conferred by the will upon the trustees. The will although conferring on the trustees general powers of disposition of trust property contains no express power touching the selection of a place of custody or deposit for funds temporarily in their hands. Furthermore the powers which are granted by the will for the management of the trust are in no sense personal to the trustees named in that instrument, for they are conferred in terms upon "the said trustees or whoever may be trustee or trustees hereunder."

The real question in this case is whether the trustees while administering their trust under the supervision of a Court of equity should procure its sanction or ratification for so material and important a step of that administration as the selection of a depository for their large current balance of cash trust funds. The selection here was not about to be made under any express or personal power vested in the trustees, but it was an act incidental to the administration of the trust and discretionary in its nature. The theory of the judicial supervision of the administration of trusts certainly contemplates securing the authority or approval of the Court for all important transactions requisite to the proper management and custody of the funds of the estate. We are of opinion that the subject matter covered by the order appealed from was within the jurisdiction of the Circuit Court.

We also think the order was discretionary in its nature and it is therefore not subject to be reviewed by us on appeal. It is essential to the successful supervision by Courts of equity of the administration of trusts that matters of detail, incident to the administration, which must be regulated by the exegencies of the situation out of which they arise and the circumstances of the particular case rather than by propositions

of law, should be under the discretionary control of the supervising Court. The selection of a depository for the trust funds, although an important matter in the present case by reason of the large amount of current funds, is after all a detail of the administration of the estate. It might for a variety of reasons be found desirable to promptly make a change in the depository from time to time, and in selecting one the highest rate, of interest allowed on deposits should not be the only nor necessarily the best criterion by which to make the choice.

There was an especial propriety in the passage of the order appealed from because of the positive conflict of views and action between the two trustees who failed when afforded an opportunity to do so, to unite in the recommendation of one or more depositories for approval by the Court.

It is proper to say that there is nothing in the record or the briefs in this case in any manner reflecting on the integrity or financial soundness of any of the institutions mentioned in the proceedings.

The order appealed from will be affirmed and the case remanded.

> *Order affirmed with costs and cause*
> *remanded.*

(Decided, January 10th, 1906.)