857 A.2d 506

**Ralph T. SALVAGNO et al.**

**v.**

**William M. FREW et al.**

**No. 859, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Sept. 3, 2004.

Frederick W. Goundry, III of Frederick, for appellant.

Mark E. Herman of Baltimore, for appellee.

Argued before DAVIS, KENNEY, DEBORAH S. EYLER, JJ.

KENNEY, Judge.

Dr. Ralph T. Salvagno, Michael Fitzgerald, and the Altizer–Salvagno Center for Surgery at Robinwood appeal from an order of the Circuit Court for Washington County nullifying and vacating a decision of the Health Claims Arbitration Office (the "HCAO"). Appellants ask two questions, which we have slightly reworded:

I. Did the circuit court err by denying appellants' motion to dismiss?

II. Did the circuit court err by vacating the order of the HCAO?

For the reasons below, we shall remand the case to the circuit court with instructions to remand the claim to the HCAO for arbitration.

### Overview of the Health Care Malpractice Claims Act

The Health Care Malpractice Claims Act (the "Act"), embodied in Md.Code (1974, 2002 Repl.Vol.), §§ 3–2A–01 through 3–2A–09 of the Courts and Judicial Proceedings Article ("C.J."), was enacted in 1976 in response to the malpractice insurance crisis.[1] *Carrion v. Linzey,* 342 Md. 266, 274–75, 675 A.2d 527 (1996). The primary feature of the Act was to " 'require the submission of certain [medical malpractice] claims to an arbitration panel for initial ascertainment of liability and damages before resort [could] be had to a court of law for final determination.' " *Id.* at 276, 675 A.2d 527 (quoting *Attorney Gen. v. Johnson,* 282 Md. 274, 277, 385 A.2d 57 (1978)). The purpose of the Act was to "screen malpractice claims, ferret out meritless ones, and, in theory, . . . lower the cost of malpractice insurance and the overall costs of health care." *Adler v. Hyman,* 334 Md. 568, 575, 640 A.2d 1100 (1994). In short, medical malpractice claims are to be submitted to "mandatory arbitration as a pre-condition to any court

---

1. References to C.J. §§ 3–2A–04 and 3–2A–06 are to the 2003 supplement.

action." *Watts v. King,* 143 Md.App. 293, 306, 794 A.2d 723 (2002).[2]

"All claims, suits and actions" in which damages of more than $5,000 are sought against a health care provider for medical injury allegedly suffered by a claimant are subject to the Act. C.J. § 3–2A–02(a)(1). Claims filed with the Director of the HCAO are referred to a panel of three arbitrators. *See* C.J. § 3–2A–03. In any action for damages filed under the Act,

> the health care provider is not liable for the payment of damages unless it is established that the care given by the health care provider is not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.

C.J. § 3–2A–02(c).

Except when the issue is solely the lack of informed consent, a claimant must file with the Director a certificate of a qualified expert "attesting to departure from standards of care" and that the departure was "the proximate cause of the alleged injury." C.J. § 3–2A–04(b)(1)(i). Failure to file such a certificate "shall" result in dismissal of the claim without prejudice. *Id.* To dispute liability, a defendant must file a certificate "attesting to compliance with standards of care," or that the departure was not the proximate cause of the alleged injury, within one hundred twenty days from the date the claimant "served the certificate of a qualified expert . . . on the defendant." C.J. § 3–2A–04(b)(2). Ordinarily, the claimant's certificate must be filed within ninety days from the date of the claim, but an extension of time to file a certificate of a qualified expert "shall be granted for good cause shown." C.J. § 3–2A–04(b)(1)(i) and (5).

---

**2.** C.J. §§ 3–2A–06A and 3–2A–06B now provide for waiver of arbitration under certain circumstances.

The arbitration panel determines whether the health care provider is liable and, if so, "consider[s], itemize[s], assess[es], and apportion[s]" the appropriate damages, and incorporates into the award an assessment of costs, including the arbitrators' fees. C.J. §§ 3–2A–05(e) and (f)(1). If no party rejects the award, it becomes "final and binding," is filed in the appropriate circuit court, and constitutes a final judgment when confirmed by that court. C.J. § 3–2A–05(i). Any party, however, can reject the award "for any reason" by filing a "notice of rejection" with the Director of the HCAO and the arbitration panel and, also, an "action to nullify" the award in an appropriate circuit court within thirty days "after the award is served on the rejecting party." C.J. § 3–2A–06(a) and (b).

A party may elect to have the case tried by a jury. C.J. § 3–2A–06(b)(2). Prior to the trial, the circuit court may modify, correct, or vacate an award. C.J. § 3–2A–06(c). If the circuit court finds, for example, that the "arbitrators exceeded their powers," it "shall vacate the award, and trial of the case shall proceed as if there had been no award." C.J. §§ 3–224(b)(3) and 3–2A–06(c). If not vacated, the award is admissible as evidence at trial. C.J. § 3–2A–06(d). It is presumed to be correct and the "burden is on the party rejecting it to prove that it is not correct." *Id.*

## FACTUAL AND PROCEDURAL BACKGROUND

The complaint alleges that Dr. Ralph Salvagno, while performing surgery on William Frew's right ankle on March 26, 1997, improperly applied a tourniquet. The result was an "injury to the right calf and lost sensation to the right foot." In March 2000, William and his wife, Debra, ("claimants"), filed a two-count statement of claim with the HCAO, alleging negligence ("Count I") and loss of consortium ("Count II"). On April 11, 2000, the claimants requested an extension of time for filing a certificate of a qualified expert (the "certificate"), which the Director granted, extending the time to September 17, 2000. On August 29, 2000, the claimants requested "an additional ninety (90) days within which to

secure" the certificate. The Director granted an extension to November 1, 2000.

On October 31, 2000, the claimants filed an amended statement of claim, adding a count for lack of informed consent ("Count III"). They also requested another extension of time to file the certificate, averring:

1. Claimants have had this case reviewed by an expert.

2. Claimants' initially retained experts indicated that claimants' claim [had] merit, but claimants' specialist who has reviewed the case commented on the case in such a manner that claimants' counsel was directed to file the Amended Complaint alleging lack of informed consent, a change in theory of the case.

3. Under such a theory, claimants would not need a certificate.... However, claimants did not wish to foreclose any theory of recovery.

4. Consequently, claimants will need additional time to secure an expert opinion to provide a second look at claimants' Count One [negligence] cause of action.

5. Claimants have been proceeding with due diligence in their quest to move this case along.

Wherefore ..., claimants request an additional extension of time within which to file an expert's certificate as to Count One.

The Director extended the time to January 10, 2001.

On December 7, 2000, appellants filed a motion to dismiss Count III, which the Director denied.[3] Appellants filed another motion to dismiss on May 7, 2001, requesting that Counts I and II be dismissed because the claimants had "failed to file [the] certificate ... on or before January 10, 2001." On June 6, 2001, the Director dismissed Count I.

The chairperson of the arbitration panel (the "chairperson") issued the following scheduling order on December 3, 2001:

---

3. The basis for the motion was not included in the record extract or the record.

| February 1, 2002 | Claimants to name expert witnesses |
| March 15, 2002 | Appellants to name expert witnesses |
| April 15, 2002 | Claimants to name rebuttal witnesses |
| June 21, 2002 | Discovery cut-off |
| June 24, 2002 | Pretrial telephone conference |
| July 22-24, 2002 | Arbitration hearing |

On February 11, 2002, appellants filed a "Motion to Dismiss or, in the Alterative, Motion for Summary Judgment." Relying on *Sard v. Hardy,* 281 Md. 432, 379 A.2d 1014 (1977), appellants argued that Counts II and III should be "dismissed or judgment entered" because the claimants had not designated an expert witness and could not "make a prima facie case of lack of informed consent (nor the derivative claim of loss of consortium) without an expert witness." The claimants responded that, because appellants had not provided "thorough[] and complete[]" answers to interrogatories, they had not "secured information necessary to ascertain whether an expert [was] needed." The claimants averred:

4. The information elicited or sought to be elicited from the answers to interrogatories is relevant for the purposes of determining whether [claimants] needed an expert or whether the [appellants'] admissions would be sufficient to provide the evidence needed to go forward.

* * *

6. While cases have indicated expert testimony is needed, there is no indication that the experts need to be established at the cut-off of [claimants'] designation.

7. [Appellants'] admissions are sufficient and can be sufficient enough to establish the standard of care.

8. Until it is known to [claimants] that [claimants] will not be able to establish through [appellants'] admissions or through the course of discovery from other sources in this case as to the standard of care and the breach

thereof, then [claimants] would [not] need to address the issue of [claimants'] experts.

The claimants again requested that the "designation period for supplying expert designation be extended thirty days."

Following a hearing on appellants' motion, the chairperson filed an order dismissing without prejudice Counts II and III, finding:

1. The claimants have been granted three extensions of time by the HCAO Director, and in essence, a fourth extension of time by the [chairperson's] Scheduling Order requiring that an expert witness be designated on or before February 1, 2002. This claim was filed in March 2000, and claimants have had over two (2) years in which to name an expert witness. To date, no certificate has been filed.

\* \* \*

3. In view of *Sard*, without an expert witness, the claimants cannot make a prima facie case for lack of informed consent. I find no merit in the claimants' argument that ... Dr. Salvagno should in essence be the claimants' expert witness. The cases cited in claimants' Memorandum ... would appear to indicate that an adverse party may be called as a witness and interrogated on cross-examination both as to facts and as to expert opinion—in addition to—and not instead of—their own expert witness.

On June 13, 2002, the claimants filed in the circuit court a petition to nullify the award, arguing that, because it was permissible to rely on appellants' "admissions as to the particulars of informed consent in order to satisfy the expert requirement of *Sard*," the chairperson exceeded her authority by dismissing Counts II and III. At the same time, the claimants filed a two-count complaint, seeking damages for lack of informed consent and loss of consortium. In response to the petition to nullify, appellants denied that the chairperson had exceeded her authority. Appellants also filed a

motion to dismiss the complaint, arguing that because the claimants had not filed a certificate, they had failed to arbitrate, which is a "pre-condition to any court action."

Following a hearing, the circuit court granted the claimants' petition to nullify, vacated the chairperson's order of dismissal, and denied appellants' motion to dismiss the complaint, stating: [4]

(a) After the dismissal of [Count I], [the claimants'] . . . cause of action became one in which the sole issue was lack of informed consent, (the claim for loss of consortium being derivative of the lack of informed consent claim and in the nature of damages only). Under . . . [C.J.] § 3–2A–04(b), the [claimants] were therefore not required to file a certificate of qualified expert on the matter of lack of informed consent. The [chairperson's] dismissal of . . . [Counts II and III] exceeded her scope of authority in light of the language of . . . [C.J.] § 3–2A–04(b);

(b) Maryland law on informed consent, as set out in *Sard v. Hardy*, 281 Md. 432, 379 A.2d 1014 (1977), does not impose a necessary requirement upon the [claimants] to present expert testimony in order to meet their burden of proof as to the materiality of the risk from [claimant] William Frew's perspective. *Sard* at 447, 379 A.2d 1014[sic] makes clear that Maryland has adopted a general or lay standard of reasonableness set by law and independent of medical custom, which standard imposes no requirement of expert testimony to establish scope or breach of a physi-

---

4. The HCAO's dismissal of Count I (negligence claim) was not before the circuit court and is not an issue in this appeal. At the hearing on the motions to dismiss and nullify, appellees' counsel stated:

I don't have a physician because when I submitted the malpractice action to a doctor to review, he said there wasn't one. And he wasn't going to come in and testify against this doctor on the issue whether in the mechanism in which he actually carried out the step by step procedure it was malpractice. He said it was a bad result. It may be attributable to malpractice as well as a bad outcome.

And quite honestly, I represent to the Court that I had an expert that was not able to make that call. It's impossible for him to know. So, that's why we had Count [I] go down the tubes or otherwise we would have had the certificate.

cian's duty to disclose. However, at *Sard* 448[sic], such expert testimony would be required to establish the nature of the risks inherent in a particular treatment, the probabilities of therapeutic success, the frequency of the occurrence of particular risks, the nature of available alternatives to treatment and whether or not disclosure would be detrimental to a patient. In light of *Sard*, the [chairperson's] dismissal of [Counts II and III] with no opportunity to present the case, was premature;

(c) *State use of Miles v. Brainin*, 224 Md. 156, 167 A.2d 117 (1961), permits the [claimants] to elicit expert testimony from a defendant called as an adverse witness. *Brainin* does not, however, go so far as to permit the [claimants] to name a defendant as their sole expert witness and then to rely upon that defendant's testimony alone to prove every aspect of their lack of informed consent claim.

This timely appeal followed.

## DISCUSSION

### I. Motion to Dismiss

■ Relying on *Watts v. King*, 143 Md.App. 293, 794 A.2d 723 (2002), and *Bailey v. Woel*, 302 Md. 38, 485 A.2d 265 (1984), appellants argue that the circuit court "exceeded its jurisdiction" by denying the motion to dismiss the complaint. Because a medical malpractice claim must be submitted to mandatory arbitration before the HCAO as a "condition precedent" to the filing of any court action, appellants contend that the claimants "failed" to arbitrate the claim by not designating an independent expert. Therefore, they may not file the complaint in the circuit court. Appellees concede that "expert testimony is needed" to prove the claim for lack of informed consent, but, citing *State use and Benefit of Miles v. Brainin*, 224 Md. 156, 167 A.2d 117 (1961), they argue that, instead of designating their own expert, they could rely on Dr. Salvagno's testimony to establish the "material risks of the procedure, . . . the alternatives, and . . . the percentages of success

for each approach." Therefore, they did not fail to arbitrate their claim.

▅▅▅ Under the doctrine of informed consent, "a physician, treating a mentally competent adult under non-emergency circumstances, cannot properly undertake to perform surgery or administer other therapy without the prior consent of his patient." *Sard*, 281 Md. at 439, 379 A.2d 1014. Consent is "informed" if it is given after a physician has fairly and reasonably explained the proposed treatment or procedure. *Id.* It is the physician's duty

> to explain the procedure to the patient and to warn him of any material risks or dangers inherent in or collateral to the therapy, so as to enable the patient to make an intelligent and informed choice about whether or not to undergo such treatment.

\* \* \*

> This duty to disclose is said to require a physician to reveal to his patient the nature of the ailment, the nature of the proposed treatment, the probability of success of the contemplated therapy and its alternatives, and the risk of unfortunate consequences associated with such treatment.

*Id.* at 439–40, 379 A.2d 1014.

▅▅▅ In Maryland, the scope of a physician's duty to inform is "measured by the materiality of the information to the decision of the patient." *Id.* at 444, 379 A.2d 1014. Whether a physician has fulfilled that duty is determined by a "general standard of reasonable conduct," focusing on the information that a patient needs to make an intelligent decision. *Id.* at 442, 444, 379 A.2d 1014. Expert medical testimony is not required to establish the "scope" or the "breach of the physician's duty," but it is required to establish the "nature of the risks inherent in a particular treatment, the probabilities of therapeutic success, the frequency of the occurrence of particular risks, the nature of available alternatives to treatment and whether or not disclosure would be detrimental to a patient." *Id.* at 447–48, 379 A.2d 1014.

The two cases on which appellants rely do not address the issue presented in this case. In *Bailey*, 302 Md. 38, 485 A.2d 265, the claimants filed a claim with the HCAO and conducted discovery. At the arbitration hearing, claimants' counsel, without explanation, did not present any testimony. After the panel dismissed the claim, the claimants filed a petition to nullify the award in the circuit court, which was dismissed for failure to arbitrate. The Court of Appeals affirmed the dismissal, holding that "a plaintiff who presents no evidence before a medical malpractice arbitration panel has not satisfied the condition precedent of submitting his claim to arbitration prior to instituting court action." *Id.* at 45, 485 A.2d 265. In this case, claimants stood ready to present the evidence that they had, but were denied the opportunity to do so.

*Watts*, 143 Md.App. 293, 794 A.2d 723, involved a dental malpractice claim in which the claimant filed an expert's certificate that did not comply with C.J. § 3–2A–04(b)(1)(i). Specifically, the certificate did not attest to a departure from the standard of care by the dentist that had proximately caused the injuries.[5] The HCAO dismissed the claim, in part, because the certificate did not contain the required attestation. On appeal, we analogized the claimant's "failure to file a certificate that meets the statutory requirements to the cases in which no certificate was filed." *Id.* at 309, 794 A.2d 723. Because filing the required certificate was "an indispensable step in the arbitration process," we held that the claim had not been arbitrated before the HCAO and, therefore, could not be considered by the circuit court. *Id.* at 310, 794 A.2d 723. Here, the surviving claims, after dismissal of the negligence count, were based solely on lack of informed consent. No certificate was required. C.J. § 3–2A–04(b).

The lack of informed consent claim and derivative loss of consortium claim were dismissed based upon the chairperson's determination that claimants could not rely solely on Dr. Salvagno for expert testimony. Thus, the issue presented by

---

5. At a deposition, the expert had testified that the dentist had not deviated from the standard of care.

appellants' Motion to Dismiss was whether the claimants' failure to designate their own expert witness constituted a failure to arbitrate. In other words, were the claimants entitled to proceed with arbitration relying on the expert testimony of Dr. Salvagno, an adverse party, to establish their claim?

*Miles,* 224 Md. 156, 167 A.2d 117, involved a medical malpractice action filed prior to enactment of the Act. The decedent's family instituted a wrongful death action, alleging that the defendant physician had failed to diagnose the decedent's diabetes. The plaintiffs, relying on Md.Code (1957), Art. 35, § 9, "intended to rely only on [the physician's] testimony [and not their own expert witness] to furnish the requisite evidence" of negligence.[6] *Id.* at 162, 167 A.2d 117. When the physician was called as an adverse witness during the plaintiffs' case-in-chief, the circuit court limited the scope of the examination to factual questions, and did not allow any questions that elicited "the expert knowledge of the [physician] as to the issues in [the case]." *Id.* at 160, 167 A.2d 117. The circuit court's ruling was "that § 9 [did] not allow an examining party to elicit any *expert* testimony from an adverse witness." *Id.* (emphasis in original). Because the plaintiffs were not permitted to summon another medical expert to establish the "fact that the symptoms displayed by the [decedent] were those of a diabetic," they were unable to prove the malpractice claim and the circuit court directed a verdict in favor of the physician.[7] *Id.* at 162, 167 A.2d 117.

---

6. Article 35, § 9, the predecessor of C.J. § 9–113, provided, in pertinent part:

 [A]ny party may call as a witness any adverse party * * * and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party.

 *Miles,* 224 Md. at 159, 167 A.2d 117. C.J. § 9–113 provides:

 In a civil case, a party ... may be called by the adverse party and interrogated as on cross-examination.

7. Although the plaintiffs intended to rely only on the defendant physician's testimony, they had available another medical expert "should it become necessary." *Miles,* 224 Md. at 162, 167 A.2d 117. The circuit court ruled, however, that the expert's testimony would not be permit-

In deciding whether expert testimony could be elicited from an adverse party, the Court of Appeals recognized that there was a "dearth of authority elsewhere and there is none directly on point in Maryland. Moreover, there [were] divergent opinions on the question in malpractice cases." _Id._ at 160, 167 A.2d 117. The Court commented:

> In some jurisdictions, when a defendant doctor is called by the plaintiff as an adverse witness for cross-examination, he may be used as a medical expert. In other jurisdictions, the plaintiff is limited to eliciting facts and the doctor may not be required to give an expert opinion. In 4 Jones, Evidence, § 927, the author states positively that the adverse party may not be subjected to an examination as an expert witness, citing _Hunder v. Rindlaub,_ 61 N.D. 389, 237 N.W. 915 (1931), a case characterized in 3 Wigmore Evidence (3rd ed.), § 916, as being 'unsound.'
>
> A careful examination of the cases in other jurisdictions, and the several statutes construed by the courts in deciding them, leads us to the conclusion that the ruling of the lower court was erroneous. The defendant cites cases from at least four jurisdictions holding—under the particular 'adverse witness' statutes there involved—that an adverse party may be examined as if he were under cross-examination, but may not be requested to express an opinion based on his expert knowledge. However, the local statutes under consideration in the cases referred to were, without exception, much narrower in scope than the statute (§ 9 of Art. 35) in this State, and we decline to follow the reasons adduced for the conclusions reached in these decisions.

* * *

> The obvious purpose of 'adverse witness' statutes is to permit the production in each case of all pertinent and relevant evidence that is available from the parties to the

---

ted because, before trial, plaintiffs stated that they had intended to use only the testimony of the defendant physician. The Court of Appeals also held that it was prejudicial to exclude the expert's testimony.

action. Furthermore, it seems plain that the statute in this State is broad enough to encompass whatever expert knowledge the party called as an adverse witness may possess....

*Id.* 160–61, 167 A.2d 117. The Court of Appeals concluded that the physician could have been questioned as to his expertise in regard to the issues in the case.

The Act also does not prohibit reliance on the medical provider against whom the claim is made for expert testimony in an informed consent claim. It does, however, state that, for purposes of the certificate of merit requirement, a party "may not serve as a party's expert" and a certificate "may not be signed by: . . . [a] party; . . . [a]n employee or partner of a party; or . . . [a]n employee or stockholder of any professional corporation of which the party is a stockholder." C.J. § 3–2A–04(b)(7)(i) and (ii). As indicated, no expert certification is required for lack of informed consent claims.

We are persuaded that the claimants in this case were entitled to arbitrate the lack of informed consent claim without naming an independent expert witness. Like the plaintiffs in *Miles,* who "intended to rely on" the expert testimony of an adverse party to establish their claim, *Miles,* 224 Md. at 162, 167 A.2d 117, they could rely on the testimony of Dr. Salvagno to prove those aspects of the claims that required expert testimony. Although it may not be prudent to rely on an adverse party for necessary expert testimony, we do not believe that it is prohibited.

Moreover, there is no indication in this case that the claimants failed to make a good faith effort to arbitrate their lack of informed consent claims or that, by their failure to designate an independent expert, they sought to avoid the arbitration requirement imposed by the Act. *See Manzano v. Southern Md. Hosp.,* 347 Md. 17, 698 A.2d 531 (1997) (failure to comply with scheduling order because of an uncooperative expert witness); *Karl v. Davis,* 100 Md.App. 42, 639 A.2d 214 (1994) (counsel's "misplaced reliance" on expert's deposition not rendered to a reasonable degree of medical probability did not

demonstrate a lack of good faith in "appellant's approach to the mandated arbitration process"). Failure to name an expert witness under the circumstances of this case would not constitute a failure to arbitrate, and, therefore, the circuit court did not err by denying appellants' motion to dismiss the complaint.

## II. Vacating the HCAO Order

■ In its "Memorandum Opinion and Rulings on Motions," the circuit court wrote:

> The HCAO director properly dismissed [the claimants'] claim of negligence on June 6, 2001, for failure to file a certificate of qualified expert in accordance with [Cts] . . . § 3–2A–04(b). The HCAO director dismissed [the claimants'] remaining claims for lack of informed consent and loss of consortium on April 18, 2002 for the same reason.

The circuit court concluded that, "[i]n light of *Sard,* the [chairperson's] dismissal of [claimant's] lack of informed consent and loss of consortium claims, with no opportunity to present the case, was premature." It granted the claimants' petition to nullify the award and vacated the chairperson's order dismissing the informed consent and loss of consortium claims "in accordance with [C.J.] . . . §§ 3–224(b)(3) and 3–2A–06(c)."

C.J. § 3–2A–06(c) provides for the vacation of an award if "the court finds that a condition stated in § 3–224(b)(1), (2), (3), or (4) exists. . . ." That section reads:

> (b) *Grounds.*—The court shall vacate an award if:
>
> (1) An award was procured by corruption, fraud, or other undue means;
>
> (2) There was evident partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party;
>
> (3) The arbitrators exceeded their powers;
>
> (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown for the postponement, refused to hear evidence material to the controversy, or otherwise

so conducted the hearing, contrary to the provisions of § 3–213, as to prejudice substantially the rights of a party. . . .

In vacating the order of the HCAO, the circuit court found that the chairperson "exceeded her scope of authority in light of the language of [C.J.] § 3–2A–04(b)." Appellants contend that the circuit court erred because the chairperson did not exceed her authority and dismissal was not "a completely irrational result."

 To be sure, a circuit court's role in vacating an award of the HCAO is "severely limited." *Southern Maryland Hosp. Ctr. v. Edward M. Crough, Inc.*, 48 Md.App. 401, 407, 427 A.2d 1051 (1981) (citing *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1127 (3d Cir.1969)). Under the Act, the "General Assembly has restrictively defined the grounds under which and the condition upon which a court may vacate an award and has expressly proscribed any possibility of substitution of a reviewing court's judgment for that of the arbitrator." *Nick–George Ltd. Partnership v. Ames–Ennis, Inc.*, 279 Md. 385, 389, 368 A.2d 1001 (1977).

We agree that the circuit court's order vacating the chairperson's dismissal of the lack of informed consent claim and derivative loss of consortium claim was appropriate, but, because the arbitration did not go forward, there was no award to be nullified or vacated under C.J. § 3–2A–06(c). We explain.

As we previously discussed, appellants filed a "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment." Rather than grant summary judgment, which presumably would have resulted in a liability finding in favor of appellants, the chairperson dismissed the lack of informed consent claim and the derivative loss of consortium claim without prejudice. Although the Court of Appeals, in *McClurkin v. Maldonado*, 304 Md. 225, 231, 498 A.2d 626 (1985), said that a dismissal based on a failure to produce timely information in discovery is an "award," the Court recognized in *Su v. Weaver*, 313 Md. 370, 381, 545 A.2d 692 (1988), that "the award which is introduced into evidence at trial will reflect for which

party the arbitration panel found on each liability issue generated by the evidence." This is consistent with the Court's earlier observation in *Wyndham v. Haines*, 305 Md. 269, 274, 503 A.2d 719 (1986), that the Act "requires the panel to first determine the issue of liability" and that the "proper performance of this function obviously requires the presentation and evaluation of evidence." In *Crawford v. Leahy*, 326 Md. 160, 166, 604 A.2d 73 (1992), the Court, in considering whether an "award" is divisible between liability and damages for the purpose of rejecting an award, said that "the arbitration award on the merits is clearly comprised of two essential and related determinations: liability and damages.... These combined determinations on the merits constitute the 'award' of an arbitration panel as defined by the Act."

The arbitration process was designed to screen medical malpractice claims before they reach the courts. To permit access to the court without an award on the issue of liability, in the absence of statutory non-compliance or a party's failure to arbitrate in good faith, would frustrate the purpose of the statutory presumption of correctness of the award, which "promotes final resolution of the claim in one stage (arbitration) rather than two (arbitration and trial)." *Su*, 313 Md. at 381, 545 A.2d 692 (*citing Attorney Gen. v. Johnson*, 282 Md. 274, 292 n. 17, 385 A.2d 57 (1978)). Without "a thorough presentation of the case at the arbitration," *Id.*, the ultimate issue, the health care providers's liability, and if liability, damages, has not been arbitrated. Thus, there is no award to be presumed correct. As Chief Judge Gilbert, writing for this Court in *Osheroff v. Chestnut Lodge, Inc.*, 62 Md.App. 519, 528, 490 A.2d, 720 (1985), stated: "The reason for arbitration is to arrive at a decision, not a non-decision." The dismissal of a case prior to the liability determination is, in effect, a non-decision because there is no award to vacate pursuant to C.J. § 3–2A–06(c).

Having determined that the chairperson should not have dismissed the case, and that there is no award under C.J. § 3–2A–05, we are confronted again with the question first

asked in *Alfred Munzer, M.D., P.A., v. Ramsey,* 63 Md.App. 350, 359, 492 A.2d 946 (1985): "Where Do We Go From Here?" Does the case proceed in the circuit court without an award that is presumed correct, or should the case return to the HCAO for a liability determination based on the evidence presented?

Although the question was not directly addressed, we find guidance in the case of *Manzano,* 347 Md. 17, 698 A.2d 531. In *Manzano,* the chair of the arbitration panel dismissed the case for the failure to provide dates for the designated expert's deposition, in accordance with the scheduling order. As in this case, the claimant filed a notice of rejection of the arbitration award with the HCAO and an action to nullify the arbitration award in the circuit court, which was opposed by the health care provider. The circuit court found that the chairperson did not abuse his discretion and that the delay in providing the deposition date "constitutes a failure to arbitrate." *Id.* at 22, 698 A.2d 531. We affirmed that decision, but the Court of Appeals reversed. Although a chairperson could properly sanction a party for a discovery violation, the imposition of the "extreme sanction of dismissal" was, under the circumstances, an abuse of discretion. *Id.* at 29, 698 A.2d 531. The Court remanded the case to the circuit court "with instructions to remand the claim to arbitration." *Id.* at 20, 698 A.2d 531.

In the order dismissing the case, the chairperson refers to a "fourth extension of time" (three by the HCAO Director and one attributable to the scheduling order) in designating an expert witness. The chairperson also says that, "[t]o date, no certificate of merit has been filed." Of course, no certificate was required, and to require one would be contrary to the Act. The order also states that, "without an expert witness, the Claimant cannot make a prima facie case for lack of informed consent." Again, the statute does not require the presentation of a prima facie case before the arbitration panel in order to gain access to the circuit court and the failure to present a prima facie case before the arbitration panel ordinarily does not constitute a failure to arbitrate. *See Wyndham,* 305 Md.

269, 503 A.2d 719. The dismissal prior to arbitration could not, as a matter of law, be based on either the failure to file a certificate or a requirement that the claimants be able to present a prima facie case at arbitration. Dismissal could be based on the failure to comply with the scheduling order so long as the sanction did not constitute an abuse of discretion.

In this case, it is difficult to understand how the failure to designate an independent expert, when one was not required, would prejudice the physician or represent bad faith in regard to the arbitration process on the part of the claimants. To the contrary, in light of the chairperson's position on the need for an independent expert, it might have been to the physician's advantage to proceed with the arbitration and secure a favorable award. That award would not ordinarily be nullified or vacated based on a mistake of law. *See Hott v. Mazzocco*, 916 F.Supp. 510 (D.Md.1996). On the other hand, if the claimants, relying on the physician's testimony to establish their claim, had failed in their roll of the dice, any prejudice to the physician could be avoided by precluding them from calling another expert. To apply the ultimate sanction under those circumstances was an abuse of discretion and the circuit court did not err by vacating the order dismissing the claim.

**JUDGMENT AFFIRMED. CASE TO BE RETURNED TO THE CIRCUIT COURT FOR WASHINGTON COUNTY WITH INSTRUCTIONS TO REMAND THE CASE TO THE HCAO FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLANTS.**