881 A.2d 660

**Ralph T. SALVAGNO, M.D., et al.**

v.

**William M. FREW, et al.**

**No. 105, Sept. Term, 2004.**

Court of Appeals of Maryland.

June 10, 2005.

Reconsideration Denied July 14, 2005.

Frederick W. Goundry, III (Varner & Goundry, P.C., on brief), Frederick, MD, for petitioners.

Mark E. Herman, Baltimore, MD, for respondents.

ARGUED BEFORE BELL, C.J., and RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

WILNER, J.

This is a medical malpractice action arising from surgery performed on plaintiff, William Frew's, right ankle. The claim, as it reached the Circuit Court for Washington County, was based solely on the alleged lack of informed consent. The claim had previously been dismissed by the Health Claims Arbitration Office (HCAO) because Frew had not identified an expert witness, presumably to testify as to what advice was required and whether the failure to give it constituted a departure from the applicable standard of care.[1]

Frew treated the dismissal as an award for the defendants, rejected it, and filed a petition to nullify it and a Complaint. Though it made no prediction as to any likely success, the Circuit Court concluded that Frew could, if he wished, choose to rely on what he hoped would be favorable testimony from the defendant physician, so it nullified the HCAO award and set the case in for further judicial proceedings. Although that ruling obviously did not constitute a final judgment in the matter, the defendants noted an appeal to the Court of Special Appeals, urging that the ruling was immediately appealable because it exceeded the subject matter jurisdiction of the Circuit Court. The intermediate appellate court accepted jurisdiction of the appeal, concluded that the Circuit Court

---

1. As a result of subsequent legislation, the Health Claims Arbitration Office has been renamed the Health Claims Alternative Dispute Resolution Office. We shall use the former name or its acronym (HCAO).

was correct in its substantive ruling, but decided that the case should be remanded to HCAO, rather than proceed in the Circuit Court. *See Salvagno v. Frew*, 158 Md.App. 315, 857 A.2d 506 (2004).

We shall vacate the judgment of the Court of Special Appeals. The ruling of the Circuit Court was not immediately appealable. The intermediate appellate court should have dismissed the appeal as not allowed by law.

## BACKGROUND

Maryland Code, § 3–2A–04 of the Cts. & Jud. Proc. Article (CJP), requires a person who wishes to pursue a claim against a health care provider for damages due to medical injury to file the claim with the Director of HCAO. The scheme envisioned by that subtitle of the Code is that, subject to waiver by any party, settlement or abandonment by the claimant, or dismissal on procedural or other limited grounds, such a claim will be submitted to non-binding arbitration before a panel consisting of an attorney, a health care provider, and a person who is neither an attorney nor a health care provider. One of the pre-conditions to proceeding to arbitration, or waiver, is provided by CJP § 3–2A–04(b). That section requires that, unless the sole issue presented in the claim is the lack of informed consent, the claim is subject to dismissal without prejudice unless, within a certain time deadline or extensions thereto, the claimant files with the Director a certificate from a qualified expert that attests (1) to the defendant's departure from standards of care, and (2) that the departure was the proximate cause of the alleged injury.

On March 16, 2000, Mr. Frew and his wife filed a claim with HCAO against three health care providers—Ralph T. Salvagno, Altizer–Salvagno Center for Joint Surgery at Robinwood, and Michael Fitzgerald. The only allegation in the Statement of Claim was that, on March 26, 1997, Dr. Salvagno performed an operative procedure on Frew, at which time a tourniquet was improperly applied, and that, as a result of the improper application of the tourniquet and the performance of the

surgery, Frew sustained injuries to his right calf and right foot. The sole basis of the claim was negligence in performing the procedure and failing to follow up complaints of pain. No particular negligence was alleged against anyone other than Dr. Salvagno.

The initial claim contained two counts—one by Mr. Frew for negligence, and a loss of consortium claim by him and his wife. For convenience, we shall hereafter refer to the claimants collectively as Frew. In October, 2000, Frew filed an amended claim with HCAO, adding, as Count Three, a claim of lack of informed consent—that the defendants performed surgery on Mr. Frew's right ankle without properly obtaining his informed consent and that, as a direct and proximate result, he was injured.

Frew apparently had difficulty obtaining an expert's certificate attesting to the defendants' actionable negligence in the performance of the surgery, and, on or about June 6, 2001, after several extensions had been granted, the HCAO Director dismissed the negligence claim for failure to meet the requirement of CJP § 3–2A–04(b). That left only the alleged lack of informed consent count and the pendent loss of consortium claim, as to which an expert's certificate was not required.

CJP § 3–2A–05(c) provides that the attorney member of the arbitration panel shall act as chair of the panel and shall decide all prehearing procedures, including issues relating to discovery and motions *in limine*. Section 3–2A–05(a)(1) requires that all issues of law be referred to the panel chair. On December 3, 2001, the panel chair issued a scheduling order that set a deadline of February 1, 2002 for Frew to name his expert witnesses. The defendants were to name their expert witnesses by March 15, 2002, and June 21, 2002 was established as the end of discovery. The arbitration hearing was scheduled for July 22, 23, and 24, 2002.

When Frew failed to name his expert witnesses by the February 1 deadline, the defendants filed a motion to dismiss the claim or, in the alternative, a motion for summary judgment. They argued in their motion that, under this Court's

decision in *Sard v. Hardy*, 281 Md. 432, 379 A.2d 1014 (1977), expert medical testimony was required in order to prove a claim based on lack of informed consent and that, without such a witness, Frew could not establish a prima facie case. Frew responded that he had served certain interrogatories on Dr. Salvagno seeking information relevant to whether Frew might need an expert witness and that Salvagno had not provided sufficient information for him to make that determination. He added that, although he might eventually need an expert witness, the law did not require that "the experts need to be established at the cut-off of Plaintiff's designation."[2] Frew asked for a 30–day extension to supply an expert witness designation but asserted that Salvagno's "admissions" would suffice to establish the standard of care.

That response was not persuasive to the panel chair, who, by Order dated April 18, 2002, dismissed without prejudice the lack of informed consent and loss of consortium claims because of Frew's failure to designate an expert witness. The panel chair concluded, in relevant part:

"In view of *Sard* [*v. Hardy, supra*], without an expert witness, the Claimants cannot make a prima facie case for lack of informed consent. I find no merit in the Claimants argument that the Health Care Provider, Dr. Salvagno, should in essence be the Claimants' expert witness. The cases cited in Claimants' Memorandum in Support of Opposition to Motion for Summary Judgment would appear to indicate that an adverse party may be called as a witness

---

**2.** One of the interrogatories asked: "If you contend that Plaintiff's injuries were caused by a known risk or complication, or recognized risk or complication to the professional services rendered to Plaintiff, state the risk or complication, whether it was accepted, recognized or known to the professional community at large, whether it was communicated to the Plaintiff, and if so, when, and by whom, whether the communication was oral or in writing, and if written, attach a copy." Salvagno refused to answer that interrogatory. His response was: "Health Care Provider objects to this Interrogatory on the grounds that it calls for an expert opinion. Testifying experts have not yet been determined. Once testifying experts have been identified, Claimants will be permitted to depose and seek such information from those experts."

and interrogated on cross-examination both as to facts and as to expert opinion—in addition to—and not instead of—their own expert witness."

CJP § 3–2A–06(a) permits a party to reject an award for any reason. In order to do so, however, the rejecting party must, within 30 days after the award is served on the rejecting party or within 10 days after denial of a timely application for modification or correction of the award, (1) file a notice of rejection with the HCAO Director, and (2) file an action in court to nullify the award. Frew's immediate response to the panel chair's order was a motion for reconsideration, which, on May 16, was denied. Frew filed a notice of rejection with the HCAO Director and a petition in the Circuit Court for Frederick County to nullify the award. He averred that he had a right to rely on the defendants' admissions "as to the particulars of informed consent" and that the panel chair exceeded her authority in dismissing his claim. Accompanying the Petition to Nullify, in conformance with Maryland Rule 15–403, was a two-count Complaint that tracked the amended HCAO claim—Count I charging lack of informed consent and Count II being a loss of consortium claim—along with a request for jury trial.

Five days later, Frew moved to transfer the action to the Circuit Court for Washington County, noting that the action was filed in Frederick County in the mistaken belief that Hagerstown was in that county and that proper venue lay in Washington County. In the absence of any objection, the case was transferred pursuant to the request.

The defendants moved to deny the Petition to Nullify and to dismiss the Complaint. In their response to the petition, they asserted that the panel chair did not exceed her authority. In their motion to dismiss, they averred that arbitration was a precondition to any court action and that, by failing to name an expert witness, Frew had effectively failed to arbitrate his claim. In making that argument, they relied principally on *Bailey v. Woel,* 302 Md. 38, 485 A.2d 265 (1984) and *Watts v. King,* 143 Md.App. 293, 794 A.2d 723 (2002).

After a non-evidentiary hearing, the Circuit Court, on May 12, 2003, filed an opinion and order granting Frew's petition to nullify the award, vacating the panel chair's order dismissing the claim, and denying the defendant's motion to dismiss. The court concluded that, with a claim based solely on lack of informed consent, Frew was not required to produce a certificate from an expert and that *Sard v. Hardy* did not "impose a necessary requirement upon Plaintiffs to present expert testimony in order to meet their burden of proof as to the materiality of the risk from [Frew's] perspective." It held that the panel chair's dismissal of the claim "with no opportunity to present the case, was premature." Accordingly, the court ordered that a scheduling conference be set by the Assignment Office, indicating thereby that the case would remain in the Circuit Court for further proceedings.

The defendants noted an immediate appeal. Though tacitly recognizing that there was no final judgment in the case, they relied on *Watts v. King, supra*, 143 Md.App. 293, 794 A.2d 723 for the proposition that the order was nonetheless immediately appealable. In *Watts*, the Court of Special Appeals concluded that an immediate appeal would lie from an interlocutory order that is beyond the jurisdiction of the lower court and that, in a health care malpractice action that the law requires be submitted in the first instance to arbitration in conformance with CJP §§ 3–2A–01 through 3–2A–09, the Circuit Court has no jurisdiction until that requirement is satisfied.

The Court of Special Appeals in this case did not address the appealability of the Circuit Court order but apparently accepted the defendant's argument that an immediate appeal would lie where the order appealed from was allegedly outside the lower court's jurisdiction.[3] It concluded, however, that the Circuit Court was correct in vacating the panel chair's dismissal of the claim. That, in turn, was based on its conclusion

---

**3.** We note that Frew did not challenge the immediate appealability of the order but instead argued, on the merits, that the Circuit Court *did* have jurisdiction to vacate the panel chair's dismissal of the claim.

that, in a lack of informed consent case, while it may not be prudent to do so, the plaintiff may rely on the defendant's admissions "to prove those aspects of the claims that required expert testimony." *Salvagno v. Frew, supra,* 158 Md.App. at 331, 857 A.2d at 515. The court noted, however, that, because as a result of the dismissal, the arbitration never proceeded, there was no actual "award" to be nullified. In that regard, it equated an "award" with a resolution of the claim on its merits. On that premise, and relying on *Manzano v. Southern Md. Hospital,* 347 Md. 17, 698 A.2d 531 (1997), the court concluded that the case should be remanded to HCAO to proceed to arbitration.

We granted the defendants' petition for *certiorari* to consider whether, in a medical malpractice case based solely on the alleged lack of informed consent, the plaintiff (1) is required to produce expert testimony in order to establish a *prima facie* case, and (2) if so, whether the plaintiff may rely on the testimony of the defendant physician to meet that requirement. Unfortunately, we shall be unable to decide that issue, as the case is not properly before us and was not properly before the Court of Special Appeals.

## DISCUSSION

The Court of Special Appeals, directly or implicitly, made two procedural determinations that require review. First, in line with its holding in *Watts v. King, supra,* 143 Md.App. 293, 794 A.2d 723, it at least tacitly accepted the defendants' argument that an immediate appeal lies from an interlocutory order or other ruling that allegedly is beyond the jurisdiction of the lower court and that a decision by a Circuit Court to entertain a medical malpractice action that is subject to the arbitration regime established by CJP, title 3, subtitle 2A is jurisdictionally deficient. Second, it concluded that "[t]he dismissal of a case prior to the liability determination is, in effect, a non-decision, because there is no award to vacate pursuant to [CJP] § 3–2A–06(c)." *Salvagno v. Frew,* 158 Md.App. at 334, 857 A.2d at 517. That conclusion followed what the court had said in *Alfred Munzer, M.D., P.A. v.*

*Ramsey,* 63 Md.App. 350, 492 A.2d 946 (1985). It was on that basis that the court insisted that the case be remanded to HCAO rather than remain for adjudication in the Circuit Court. We disagree with both of those conclusions.

### Appealability

 We dealt most recently with the appealability issue in *Maryland State Board of Education v. Bradford,* 387 Md. 353, 875 A.2d 703 (2005). We noted there that, although there is, indeed, a line of cases, commencing with *Gottschalk v. Mercantile Trust Co.,* 102 Md. 521, 62 A. 810 (1906) and extending through *Waters v. Smith,* 277 Md. 189, 352 A.2d 793 (1976), in which this Court has indicated that an immediate appeal will lie from an interlocutory order that exceeds the jurisdiction of the lower court, we have in more recent times discarded that view. Rather, we have made clear that the right to seek appellate review of a trial court's ruling ordinarily must await the entry of a final judgment that disposes of all claims against all parties, and that there are only three exceptions to that final judgment requirement: appeals from interlocutory orders specifically allowed by statute; immediate appeals permitted under Maryland Rule 2–602; and appeals from interlocutory rulings allowed under the common law collateral order doctrine. We noted in *Bradford* that in *Gruber v. Gruber,* 369 Md. 540, 547, 801 A.2d 1013, 1017 (2002), we held flatly that "a trial court's order denying a challenge to its jurisdiction is a nonappealable interlocutory order."

 We further observed in *Bradford* that a contrary approach would be wholly inconsistent with the very purpose of the final judgment rule, which is to avoid piecemeal appeals that create inefficiencies in both the appellate and trial courts: "The mere allegation that a clearly interlocutory order is jurisdictionally deficient should not serve to halt proceedings in the trial court while an appellate court considers whether the allegation has merit." *Maryland State Board of Education v. Bradford, supra,* 387 Md. at 384, 875 A.2d at 721. The wisdom of that approach is apodictic in this case. On

May 12, 2003, the Circuit Court directed that the case, involving a claim of only $25,000, proceed. Two years later, the case is still in limbo because of these appeals-fourteen months in the Court of Special Appeals and six months, counting from the granting of *certiorari*, in this Court, all because of a questionable allegation regarding the Circuit Court's jurisdiction to nullify the HCAO award and proceed on the Complaint.[4]

### *Was There An Award?*

In *Alfred Munzer, M.D., P.A. v. Ramsey, supra,* 63 Md. App. 350, 492 A.2d 946, a claim was made against five health care providers, and an arbitration panel was appointed to hear the claim. Prior to any arbitration, the chairman of the panel, acting alone, signed an order granting "summary judgment" in favor of one of the providers, upon concluding that there was no liability on the part of that provider to the claimant. No

---

4. We have made clear that a court's actions cannot be assailed for lack of subject matter jurisdiction unless that jurisdiction is lacking in a "fundamental sense." *First Federated Com. Tr. v. Comm'r,* 272 Md. 329, 334, 322 A.2d 539, 543 (1974). "Fundamental jurisdiction," we have held, refers to the "power to act with regard to a subject matter which 'is conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers, or in authority specially conferred.' " *Pulley v. State,* 287 Md. 406, 416, 412 A.2d 1244, 1249 (1980) (quoting *Cooper v. Reynolds' Lessee,* 77 U.S. (10 Wall.) 308, 316, 19 L.Ed. 931, 932 (1870)). Thus, a court has fundamental jurisdiction when it has power to render a judgment over a class of cases within which a particular one falls, *First Federated Co. Tr. v. Comm'r, supra,* 272 Md. at 335, 322 A.2d at 543, and the fact that "a statutory provision directs a court ... to decide a case in a particular way, if certain circumstances are shown, does not create an issue going to the court's ... subject matter jurisdiction." *Board of License Comm. v. Corridor,* 361 Md. 403, 417, 761 A.2d 916, 923 (2000).

In *Oxtoby v. McGowan,* 294 Md. 83, 91, 447 A.2d 860, 864–65 (1982), we explained that the Circuit Courts do possess fundamental subject matter jurisdiction over claims that fall under the Health Care Malpractice Claims Act and that, although the statute places a precondition on the invocation or exercise of that jurisdiction, it "does not take away the subject matter jurisdiction of a circuit court to hear and render judgments in cases involving claims which fall within the Act." Any contrary holding in *Schwartz v. Lilly,* 53 Md.App. 318, 452 A.2d 1302 (1982) and *Watts v. King, supra,* 143 Md.App. 293, 794 A.2d 723 is disapproved. The simple fact is that there was no fundamental jurisdictional impediment to the Circuit Court's action in this case.

costs were assessed and, although copies of the order were sent to the parties, the original order was never delivered to the HCAO Director. The case against the other providers proceeded but was eventually settled and, as a result of the settlement, dismissed. No award of any kind was made with respect to them.

The claimant then rejected the award in favor of the one provider and filed an action in Circuit Court seeking, in the alternative, either nullification or a remand to the panel to proceed with the arbitration. The Circuit Court concluded that there was no award to nullify and that it had no jurisdiction in the matter, and it ordered the case remanded to HCAO. The Court of Special Appeals believed likewise and directed that the Circuit Court action be dismissed without prejudice, to permit the arbitration to proceed.

In reaching that conclusion, the Court of Special Appeals did not resolve whether the panel chair had the authority to enter a "summary judgment," and, indeed, it confirmed an earlier holding in *Stifler v. Weiner*, 62 Md.App. 19, 488 A.2d 192 (1985), *cert. denied*, 304 Md. 96, 497 A.2d 819 (1985), that a panel chair *did* have authority to enter summary awards in certain situations. Rather, it held that, whether the panel chair was right or wrong, no award was ever made. An award, it said, must not only resolve the issues of liability and damages but also assess the costs of arbitration and be delivered to the HCAO Director. In the *Munzer* case, there was no assessment of costs and, as noted, the order was never delivered to the Director. Until that was done, the court added, the order was entirely interlocutory and subject to change by the panel chair.

■ The case before us is quite different, in part because of changes in the legal landscape. For one thing, as we have observed, it is now clear that the panel chair may resolve issues of law and "decide all prehearing procedures including issues relating to discovery." CJP § 3–2A–05(a)(1) and (c). The dismissal ordered here was a sanction for what the panel chair believed was the failure to provide discovery as required

in her scheduling order. In that regard, we note that CJP § 3–2A–02(d) makes the Maryland Rules applicable to "all practice and procedure issues arising under this subtitle," that CJP § 3–2A–05(b)(2) specifically makes the Maryland Rules relating to discovery applicable to proceedings under the subtitle, and that Maryland Rule 2–433 permits a court, upon a plaintiff's failure to provide discovery, to dismiss an action. Moreover, unlike the situation in *Munzer,* the order here *did* assess costs—they were split equally between the parties— and it was filed with the HCAO Director.

When *Munzer* was decided, the term "award" was not defined, either in the statute or in the Maryland Rules implementing the statute. In 1997, we revised the rules relating to health claims arbitration and, in the process, adopted Maryland Rule 15–402(b), which defines "award" as "a final determination of a health care malpractice claim by an arbitration panel *or by the panel chair.*" (Emphasis added). Unquestionably, the order by the panel chair dismissing Frew's claim constituted a final determination of that claim. There was nothing left before HCAO, especially when Frew's motion for reconsideration was denied. Whether the order was right or wrong, authorized or unauthorized, it clearly disposed of the claim and thus constituted an award in favor of the defendants. It was therefore subject to rejection by Frew and an action in court to nullify it.

One question raised in *Munzer* and addressed by the intermediate appellate court in this case—what ultimate relief should be granted—still lingers. The effect of vacating the judgment of the Court of Special Appeals and directing that court to dismiss the appeal would leave the case pending in the Circuit Court, which would be inconsistent with the approach taken in *Munzer.* When *Munzer* was decided in 1985, the law did not permit a waiver of the arbitration procedure unless all parties agreed. It was thus clear, at that time, that, subject to a limited and undefined right of a panel chair to make certain kinds of summary dispositions, each party had a statutory right to have the claim resolved on its merits, either as a matter of fact or as a matter of law, by an arbitration

panel, and, as the *Munzer* court noted, the plaintiff in that case asked, as alternative relief in the Circuit Court, that the case be remanded to the arbitration panel. If a claim was improperly dismissed by a panel chair, the appropriate course of action was to have the matter remanded to HCAO so that the statutorily mandated arbitration could occur.

■ In 1995, the General Assembly, through the enactment of CJP § 3–2A–06B, permitted a claimant or any defendant, unilaterally, to waive arbitration and permit the case to be resolved initially in the Circuit Court. Section 3–2A–06B(b) provides that a waiver by a claimant may be made "at any time after filing the certificate of qualified expert required by § 3–2A–04(b) of this subtitle." If, as here, no such certificate is required in the particular case, the waiver may be made prior to the time that a certificate otherwise would be due. Unlike in *Munzer*, Frew did not ask that the case be remanded to HCAO for any further proceeding; when the panel chair dismissed his claim, he filed a Complaint in the Circuit Court and asked for a jury trial. We shall treat that as an election to waive arbitration before an HCAO panel. Section 3–2A–06B(b) requires that a waiving claimant file a written waiver with the HCAO Director and serve a copy on all other parties. That was done. A copy of the Complaint that effected the waiver was delivered to the Director of HCAO and was served on the other parties, as required. There is no occasion, therefore, to cause the matter to be remanded to HCAO.

**JUDGMENT OF COURT OF SPECIAL APPEALS VACATED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO DISMISS APPEAL; COSTS IN THIS COURT AND IN COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONERS.**